Dawn–Marie HAWKINS and James
E. Hawkins, Plaintiffs,

v.

LESLIE'S POOLMART, Defendant.

Civil Action No. 96–1869 (MLP).

United States District Court,
D. New Jersey.

June 6, 1997.

Gerald J. Williams, Williams and Cuker, Cherry Hill, NJ, for plaintiffs.

Eunice E. Lee, Shanley & Fisher, P.C., Morristown, NJ, for defendant.

## OPINION

PARELL, District Judge.

This matter is before the Court on motion of defendant Leslie's Poolmart ("Leslie's") for summary judgment. Plaintiffs oppose the motion. For the reasons stated in this opinion, the motion is granted in part and denied without prejudice in part.

### BACKGROUND

Plaintiffs Dawn–Marie and James Hawkins commenced this diversity action on April 19, 1996. Plaintiffs are citizens of the State of New Jersey. (Compl.¶ 4.) Leslie's is a California corporation "engaged in the business of merchandising swimming pools and swimming pool supplies, including chemicals used to sanitize swimming pools." (*Id.* ¶ 5.)

In May, 1994, plaintiffs purchased an eight-pound container of Leslie's Chlorinator Tablets 1 (the "chlorine tablets"). (*Id.* ¶ 6.) The chlorine tablets are used to eliminate or control the growth of algae, bacteria, viruses, and other plant growth in swimming pools; as such, they are considered pesticides within the meaning of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. (Def.'s Br. in Supp. of Mot. for Summ. J. at 1–2 n. 1.) There is no dispute that the label on the chlorine tablets' container was registered with and approved by the Environmental Protection Agency ("EPA"). (Supplemental Certification of Cynthia G. Watts, Vice President and General Counsel for Leslie's, ¶¶ 2–6; Pls.' Opp'n Br. at 2.)

On June 1, 1994, Mrs. Hawkins opened the container as directed, and was "struck by a gaseous fume emanating from the product, and immediately suffered a burning sensation in her throat and lungs, and extreme difficulty in breathing." (Compl.¶¶ 10–11.) Mrs. Hawkins alleges that as a result of her exposure to the chlorine tablets, she has suffered "an onset and/or severe exacerbation of chronic asthma and bronchospasm, severe headaches, shortness of breath, respiratory congestion, and chemical irritation of her respiratory tissue and vocal cords." (*Id.* ¶ 12.)

Plaintiffs' Complaint contains four state law courts: (1) negligence; (2) strict liability pursuant to § 402 of the Restatement (Second) of Torts; (3) breach of warranty; and (4) loss of consortium. Count I alleges that defendant committed the following acts of negligence:

a) negligent failure to warn plaintiff of the hazards associated with the product;

b) negligent failure to provide adequate directions or precautions regarding the opening, closing and/or storage of the package containing the product;

c) negligent failure to package the product in a manner adequate to prevent excessive chemical decomposition, contamination, combustion, or generation of fumes and gases;

d) negligent formulation of the product; and

e) such other negligence as will be ascertained in the course of discovery.

(*Id.* 18.)

In Count II of the Complaint, Mrs. Hawkins claims that she was harmed as a result of the "unreasonably dangerous and/or defective condition of the product, which was formulated, manufactured, distributed, sold and/or otherwise placed into the stream of commerce by defendant." (*Id.* ¶ 21.) Mrs. Hawkins alleges the following defects with the product: "a) defect in its manufacture or formulation; b) defect in the packaging of the product; c) absence of adequate precautions, instructions and/or warnings; and d) such other unreasonably dangerous conditions and/or defects as will be ascertained in the course of discovery." (*Id.* ¶ 22.)

Count III asserts that Leslie's "expressly and/or impliedly warranted that the product was of merchantable quality, free from defects and fit for its intended purpose," and that Leslie's breached these warranties by selling the product in an unreasonably dangerous and defective condition. (*Id.* ¶¶ 25–26.) Count IV contains Mr. Hawkins' claim for loss of consortium. (*Id.* ¶ 29.)

In support of its motion for summary judgment, Leslie's asserts that plaintiffs' claims are preempted by FIFRA. (Def.'s Br. in Supp. of Mot. for Summ. J. at 4.) Leslie's argues that in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the United States Supreme Court implicitly held that FIFRA preempts labeling-based claims. (*Id.* at 12–13.) Defendant contends that all of the federal appellate courts to have considered the issue since *Cipollone* have concluded that FIFRA preempts state law claims based on the labeling of pesticides. (*Id.* at 14–15 (citations omitted).)

In opposition to Leslie's motion for summary judgment, plaintiffs argue that claims of negligent or defective manufacture are not preempted by FIFRA. (Pls.' Opp'n Br. at 5–6.) Plaintiffs contend that none of their claims contradict, change, or interfere with the federal regulatory scheme. (*Id.* at 6–9.) Plaintiffs assert that the Supreme Court's recent decision in *Medtronic, Inc. v. Lohr*, —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), "effectively overturns" all of the cases holding that FIFRA preempts state law labeling claims. (*Id.* at 16–17.)

## DISCUSSION

A court shall enter summary judgment when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The opposing party cannot rest on mere allegations; rather, it must present actual evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quotation omitted); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Article VI of the Constitution provides that the Laws of the United States "shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, it is well established that state law that conflicts with federal law is "without effect." *Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2617 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981)). The determination of issues arising under the Supremacy Clause begins

with "the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Id.* (quotation omitted). The purpose of Congress is the "ultimate touchstone" of preemption analysis. *Id.* (quotation omitted).

Where Congress has included an express preemption clause in a statute, courts begin their preemption analysis with the language of that provision. *Grenier v. Vermont Log Bldgs., Inc.,* 96 F.3d 559, 562–63 (1st Cir.1996) (citations omitted). FIFRA's preemption clause provides:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

In *Cipollone,* the Supreme Court considered whether a similar preemption provision, contained in the Public Health Cigarette Smoking Act of 1969 (the "1969 Act"), preempted common-law claims against cigarette manufacturers. The 1969 Act's preemption clause provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." *Cipollone,* 505 U.S. at 515, 112 S.Ct. at 2617. The Court determined that the phrase

"[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.... "[S]tate regulation can be as effectively exerted through

an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

*Id.* at 521, 112 S.Ct. at 2620 (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). That the preemptive scope of the provision was not limited to positive enactments, however, did not mean that all common-law claims were preempted. *Id.* at 523, 112 S.Ct. at 2621. Rather, the Court determined, the preemption clause would not generally preempt state law obligations to avoid manufacturing defects or to use a safer alternative design. *Id.*

In determining whether the plaintiff's common law claims were preempted, the Court asked in each case whether the legal duty that is the predicate of the common law action constitutes a "requirement or prohibition based on smoking and health" imposed under State law with respect to advertising or promotion. *Id.* at 524, 112 S.Ct. at 2621. The Court concluded that the failure to warn claims were preempted insofar as they required a showing that the advertising or promotions should have included additional, or more clearly stated, warnings. *Id.* Claims based solely on testing or research, by contrast, were not preempted. *Id.* at 524–25, 112 S.Ct. at 2621–22. The Court further concluded that the plaintiff's breach of express warranty claim was not preempted by the 1969 Act. *Id.* at 526–27, 112 S.Ct. at 2622–23.[1]

Because FIFRA's preemption clause is so similar to that at issue in *Cipollone,* numerous federal appellate courts have relied on *Cipollone* in holding that FIFRA preempts state law failure to warn claims. The Courts of Appeals for the First, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits have all held that state law claims based on labels are preempted. *See Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 73 (8th Cir.1995) ("Where Congress has so clearly put pesticide labeling regulation in the hands of the EPA, the [plaintiffs'] claim

---

1. Although not relevant to the case at hand, the Court also concluded that the plaintiff's claims of fraudulent misrepresentation and conspiracy to misrepresent or conceal material facts were not preempted by federal law. *Id.* at 529, 530, 112 S.Ct. at 2624–25.

challenging the accuracy of the herbicide label's federally-mandated and approved statement cannot survive."); *Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 561 (9th Cir.1995) ("In accordance with the decisions of the Supreme Court and the First, Fourth, Fifth, Seventh, Eighth, Tenth, and the Eleventh Circuits, we conclude that Appellants' failure to warn claim against the Manufacturers and Pure–Gro is preempted to the extent that it requires additional or different information on the Manufacturers' labels."); *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 129 (4th Cir. 1995) ("[A]ny state law claim that would require the defendant to alter its EPA-approved warning label, labeling, or packaging to avoid liability is preempted."); *Bice v. Leslie's Poolmart, Inc.,* 39 F.3d 887, 888 (8th Cir.1994) (quotation omitted) ("[I]n the context of FIFRA, under which the EPA is required to approve pesticide labels, actual agency approval eliminates any possible claims under state tort law for failure to comply with federal [labeling] requirements. We therefore hold that Bice's claim for inadequate labeling or failure to warn is preempted by FIFRA."); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir.1994) ("[T]he express language of FIFRA clearly indicates that Congress intended that the federal act preempt conflicting state law, including state common law tort claims. We are far from alone in reaching this conclusion." *King v. E.I. Dupont De Nemours and Co.,* 996 F.2d 1346, 1349 (1st Cir.)) ("We hold that, in light of *Cipollone,* FIFRA preempts the plaintiffs' state law tort claims based on the defendants' alleged failure to provide adequate warnings about the health hazards of the herbicides they manufactured and sold."), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993) ("In order to succeed in the wake of *Cipollone,* ... [plaintiff] would have to show that FIFRA's pre-emption language is less sweeping than the language of the 1969 Cigarette Act. Yet we can discern no significant distinction at all—FIFRA says that '[s]uch State shall not impose ... any requirements for labeling or packaging in addition to or different from those required ...,' while the cigarette law says [n]o requirement[s] or prohibition[s] imposed under State law' shall be permitted.... Not even the most dedicated hairsplitter could distinguish these statements. If common law actions cannot survive under the 1969 cigarette law, then common law actions for labeling and packaging defects cannot survive under FIFRA."); *Papas v. Upjohn Co.,* 985 F.2d 516, 517 (11th Cir.) ("Having looked at *Cipollone,* we conclude that FIFRA expressly preempts the [plaintiffs'] claims to the extent they are based on inadequate labeling or packaging."), *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.) ("To the extent that state tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly preempted."), *cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993). The Court of Appeals for the Third Circuit has not addressed the preemptive scope of FIFRA.[2]

Notwithstanding this spate of authority, plaintiffs contend that the Supreme Court's recent decision in *Medtronic* "effectively overturns all of the cases which made the facile leap from the *Cipollone* plurality's opinion to a conclusion that common law claims were requirements different or in addition to' federal regulations. This Court should follow its lead, and hold that none of plaintiffs' claims is preempted under FIFRA." (Pls.' Opp'n Br. at 16–17.)

The *Medtronic* Court considered whether the Medical Device Amendments of 1976 (the "MDA") preempts a state common-law negligence claim against the manufacturer of an allegedly defective medical device. —— U.S. at ——, 116 S.Ct. at 2245. In finding that the MDA does not preempt state law claims,

---

**2.** Following the "lead of the seven circuits which have decided the scope of FIFRA preemption after *Cipollone,*" one court in this district has concluded that claims based on the adequacy of pesticide labels are preempted. *Cattell v. Great Lakes Chem. Corp.,* No. 94–1243, 1995 WL 250400, at *7 (D.N.J. Apr. 21, 1995).

the Court repeatedly stressed that most medical devices are not subjected to the rigorous premarket approval ("PMA") process contemplated by the MDA:

> Not all, nor even most, Class III devices on the market today have received premarket approval because of two important exceptions[3] to the PMA requirement.
>
> . . . . .
>
> In 1983, ... a House Report concluded that nearly 1,000 of approximately 1,100 Class III devices that had been introduced to the market since 1976 were admitted as 'substantial equivalents' and without any PMA review.... [T]he House reported in 1990 that 80% of new Class III devices were being introduced to the market through the § 510(k) process[4] and without PMA review.
>
> . . . . .
>
> [T]he 510(k) process is focused on equivalence, not safety. As a result, substantial equivalence determinations provide little protection to the public. These determinations simply compare a post–1976 device to a pre–1976 device to ascertain whether the later device is no more dangerous and no less effective than the earlier device. If the earlier device poses a severe risk or is ineffective, then the later device may also be risky or ineffective.

*Id.* at ——, ——–——, ——, 116 S.Ct. at 2247, 2247–48, 2254 (citations and quotations omitted). Further, the Court took pains to distinguish the MDA from the statute at issue in *Cipollone. See id.* at ——, ——, 116 S.Ct. at 2252, 2255. Nowhere did the Court suggest that its decision overruled the plethora of appellate decisions holding that FIFRA preempts state law failure to warn claims.

Two cases decided after the Supreme Court's decision in *Medtronic* support the Court's view that *Medtronic* did not alter the law on FIFRA preemption. In *Grenier v. Vermont Log Buildings, Inc.*, 96 F.3d 559 (1st Cir.1996), the plaintiffs claimed that the defendants should have warned them that a wood preservative was not suitable for residences. The Court of Appeals for the First Circuit held that this claim, "whether presented as a negligence claim or a claim for breach of implied warranty, is preempted by FIFRA." *Id.* at 563. The appellate court cited *Medtronic* for two propositions: (1) where Congress has included an express preemption clause in the statute, courts must begin their analysis with the language of that provision; and (2) the term "requirements" presumptively includes state causes of action as well as laws and regulations. *Id.* at 562, 563 (citing *Medtronic,* —— U.S. at ——– ——, 116 S.Ct. at 2251–53). The First Circuit never considered that *Medtronic* might have impliedly overruled the appellate decisions holding that FIFRA preempts claims based on labeling. Rather, the court cited a pre-*Medtronic* case in support of its holding, and noted that that case, unlike *Medtronic,*

---

**3.** The two exceptions to the PMA requirement are as follows:

> First, Congress realized that existing medical devices could not be withdrawn from the market while the FDA completed its PMA analysis for those devices. The statute therefore includes a "grandfathering" provision which allows pre–1976 devices to remain on the market without FDA approval until such time as the FDA initiates and completes the requisite PMA. Second, to prevent manufacturers of grandfathered devices from monopolizing the market while new devices clear the PMA hurdle, and to ensure that improvements to existing devices can be rapidly introduced into the market, the Act also permits devices that are "substantially equivalent" to pre-existing devices to avoid the PMA process.

*Id.* at 2247 (citations and footnote omitted).

**4.** The § 510(k) process is a "limited form of review" which is imposed on every manufacturer that intends to market a new device. *Id.* at 2247. The manufacturer is required to submit a "premarket notification" to the FDA; if the FDA determines on the basis of this notification that the device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory review. *Id.* The § 510(k) notification process is

> by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in an average of only 20 hours.... [T]he attraction of substantial equivalence to manufacturers is clear. [Section] 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly.

*Id.* (citations and quotation omitted).

572

involved FIFRA itself. Id. at 563 (citing *King*, 996 F.2d 1346).

A New Jersey Appellate Division case has explicitly distinguished *Medtronic* from *Cipollone* and concluded that FIFRA preempts state law failure to warn claims. In *Lewis v. American Cyanamid Co.*, 294 N.J.Super. 53, 56–57, 682 A.2d 724, 725 (App.Div.1996), the plaintiff was injured while using Combat Room Fogger, an aerosol insecticide. The trial court held that the plaintiff's claims based on the alleged inadequacy of the product's label were preempted by FIFRA. *Id.* at 60, 682 A.2d at 727. While plaintiffs' appeal was pending before the Appellate Division, the Supreme Court issued its decision in *Medtronic*. The Appellate Division concluded that "the holding of the plurality opinion in *Medtronic* is not inconsistent with *Cipollone*, and [held] that the Law Division's ruling that plaintiff's claims based on inadequate labeling are preempted by FIFRA remains an accurate statement of the applicable law." *Id.* at 63, 682 A.2d at 729.

The *Lewis* court found that *Cipollone* and *Medtronic* reached different results based on the differing legislative intent reflected in the statutes at issue. *Id.* at 64, 682 A.2d at 730. The Appellate Division noted that unlike the cigarette acts at issue in *Cipollone*, the MDA does not "prescribe any specific language for labels and its preemption provision does not contain any express statement of an intent to preempt state labeling requirements." *Id.* at 65, 682 A.2d at 730. The court opined that the "driving force" of *Medtronic* was "the plurality's determination not to infer that Congress intended to have whatever consumer protection might be afforded by common-law tort actions preempted in favor of a regulatory scheme that was largely toothless because of the MDA's 'grandfathering' and 'substantially equivalent' provisions." *Id.* at 66, 682 A.2d at 731. The Appellate Division reasoned that

[l]ike the preemption clause at issue in *Cipollone* and unlike that in *Medtronic,* the preemption provision of FIFRA is precise and explicit; i.e., a State "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under

this subchapter." Furthermore, FIFRA, like the *Cipollone* statutes, leaves unconstrained all state common law causes of action for defective products *except* those based on inadequate labels. Finally, FIFRA has no escape clauses like the "grandfathering" and "substantially equivalent" provisions of MDA. The statute and regulations provide that substantially all pesticides are subject to extensive review by the EPA, and the EPA prescribes precise content for pesticide labels....

*Id.* (citing 40 C.F.R. § 156.10). The court therefore affirmed the trial judge's conclusion that the plaintiff's failure to warn claim was preempted by FIFRA. *Id.* at 67, 682 A.2d at 732.

The Court agrees with the Appellate Division that *Medtronic* did not alter the law of FIFRA preemption. The Supreme Court's holding in *Medtronic* was based on the statute at issue in that case, not FIFRA. The *Medtronic* Court's determination that the MDA does not preempt state law claims was based largely on the fact that the majority of medical devices escape any form of meaningful review under the MDA. That concern is not present in the FIFRA context, where the statute and regulations provide for rigorous EPA review. *See Lewis*, 294 N.J.Super. at 66, 682 A.2d at 731. It is, moreover, difficult to believe that the Supreme Court would impliedly overrule the many appellate decisions holding that FIFRA preempts state law claims based on labeling and packaging.

■ Accordingly, because it remains the law that FIFRA preempts state law claims based on labeling and packaging, the Court shall grant defendant's motion for summary judgment as to such claims. Count I of the Complaint alleges that defendant was negligent in: (1) failing to warn plaintiffs of the dangers associated with the chlorine tablets; (2) failing to provide adequate directions regarding the opening, closing, and storing of the product; (3) failing to adequately package the product; and (4) formulating the product. (Compl.¶ 18.) Because the first three claims would require defendant to alter its EPA-approved label and packaging to avoid liability, these claims are preempted by FIFRA. Of the negligence allegations,

therefore, only the last survives defendant's motion for summary judgment: negligent formulation of the product.[5] FIFRA does not preempt all state law claims; rather it preempts those claims that are based on labeling and packaging. 7 U.S.C. § 136v (providing that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter"); *see, e.g., Papas*, 985 F.2d at 517 (holding that FIFRA preempts state law claims *to the extent that they are based on inadequate labeling or packaging* ); *see also Cipollone*, 505 U.S. at 523, 112 S.Ct. at 2621 (finding that the 1969 Act does not generally preempt state law obligations to avoid manufacturing defects or to use a safer alternative design)

In Count II of the Complaint, plaintiffs assert that Leslie's is strictly liable for manufacturing and selling a product that contains defects in its manufacture or formulation; in its packaging; and in its failure to provide adequate precautions, instructions, and warnings. (Compl.¶ 22.) For the reasons stated above, the claims based on alleged defects in packaging and labeling are preempted by FIFRA. Therefore, of plaintiffs' strict liability claims, only the allegation of defective manufacture or formulation survives Leslie's motion for summary judgment.

Count III alleges that defendant breached its warranty that the chlorine tablets were of merchantable quality, free from defects, and fit for their intended purpose by "manufacturing, selling and/or supplying the product in an unreasonably dangerous and defective condition." (Compl.¶¶ 25–26.) It is difficult to discern from this broad allegation whether plaintiffs' breach of warranty claim is predicated on the chlorine tablets' labeling or packaging. To the extent that it is, such claim is preempted by FIFRA. To the extent that plaintiffs allege that Leslie's breached a warranty unrelated to the prod-

uct's label or package, the claim survives defendant's motion for summary judgment.

Count IV of the Complaint contains Mr. Hawkins' derivative claim for loss of consortium. (*See* Compl. ¶ 29.) Because some direct claims remain in the case, the Court shall deny without prejudice defendant's motion for summary judgment with respect to Count IV.

An order accompanies this opinion.

### ORDER

For the reasons stated in the accompanying opinion,

**IT IS**, therefore, on this 6th day of June, 1997, **ORDERED** that the motion of defendant Leslie's Poolmart for summary judgment be and hereby is **GRANTED** in part and **DENIED WITHOUT PREJUDICE** in part as follows:

1. Defendant's motion is **GRANTED** with respect to all negligence, strict liability, and breach of warranty claims relating to failure to warn, labeling, and/or packaging; and

2. Defendant's motion is **DENIED WITHOUT PREJUDICE** with respect to the negligence, strict liability, and breach of warranty claims relating to manufacture and/or formulation; and

3. Defendant's motion is **DENIED WITHOUT PREJUDICE** with respect to Count IV.

---

5. Leslie's contends that because plaintiffs "have failed to offer 'significant probative evidence' of the defective formulation," the Court should grant Leslie's motion for summary judgment. (Def.'s Reply Br. at 15.) Defendant filed the instant motion for summary judgment in lieu of an answer, however, and no discovery has been conducted. Thus, it would be premature for the Court to conclude that there exists no genuine issue of material fact with respect to plaintiffs' negligent manufacture/formulation claim.