David **LYALL** and Rose Ann Lyall, Plaintiffs,

v.

**LESLIE'S POOLMART a/k/a Leslie's Poolmart (Inc.), d/b/a Leslie's Swimming Pool Supplies, a foreign corporation, Occidental Chemical Corporation, a foreign corporation, Stellar Manufacturing Company, corporation,**

No. 96–CV–60201–AA.

United States District Court, E.D. Michigan, Southern Division.

Oct. 31, 1997.

Louis G. Corey, Corey & Carolan, P.C., Royal Oak, MI, for David Lyall, Rose Ann Lyall.

Nancy L. Waldmann, Jaffe, Raitt, Heuer & Weiss, Professional Corp., Detroit, MI, for Leslie's Poolmart, Occidental Chemical Corp.

John M. Conway, Troy, MI, for Stellar Mfg.

Richard P. Smith, Detroit, MI, for Plastican.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS LESLIE'S POOLMART'S, OCCIDENTAL CHEMICAL CORPORATION'S AND PLASTICAN INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT STELLAR MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT*

HACKETT, District Judge.

This is a products liability action arising out of plaintiff David Lyall's (Lyall's) injuries sustained when he attempted to open a 40–pound container of chlorine for his swimming pool. Lyall's wife Rose Ann Lyall also has joined in the suit alleging loss of consortium. Plaintiffs are suing the seller and manufacturers of the container, chlorine tablets and raw materials, alleging negligence and breach of implied and express warranties. All of the defendants have filed motions for summary judgment, arguing that plaintiffs' claims are preempted by federal packaging and labeling requirements set forth under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y, and the Hazardous Materials Transportation Act (HMTA), 49 U.S.C. § 5125. Plaintiffs oppose the motions. Defendant Stellar Manufacturing Inc. also argues that it is entitled to summary judgment because it adhered to packaging specifications provided by defendant Occidental Chemical Corporation (Occidental). For the reasons set forth below, defendants, motions for summary judgment shall be granted in part and denied in part.

*BACKGROUND*

On August 11, 1995, David Lyall was adding chlorine to his swimming pool in the backyard of his home. The chlorine was in tablet form and was specifically known as Leslie's Chlorinator Tablets 1" (1" tablets). Defendant Leslie's Poolmart is a national retailer of pool supplies which sold the chlorinator tablets to plaintiffs. The tablets were in a 5.5 gallon plastic container having a child proof lid. Defendant Plastican Inc. (Plastican) designed and manufactured the contain-

er. Defendant Stellar Manufacturing Company (Stellar) manufactured the chlorinator tablets. Stellar maintains that it packaged the tablets with strict adherence to the requirements of defendant Occidental. Occidental manufactured and shipped to Stellar the raw ingredients, including trichlor, used to make the chlorinator tablets, as well as the containers which Stellar used to package the tablets. In summary, the defendants and their role in the manufacture and sale of the chlorine tablets and its container are: (1) Leslie's Poolmart, retail seller; (2) Occidental, manufacturer of raw materials used to make chlorine tablets and supplier of container; (3) Plastican, manufacturer of container; and, (4) Stellar, manufacturer of chlorine tablets.

Plaintiff David Lyall claims that on August 11, 1995, when he attempted to open the 40–pound container of chlorine tablets, the lid blew off because of the build up of the gas nitrogen trichloride. He claims that the lid, chlorine and chlorine gas exploded into his face, causing him to lose his right eye and to suffer severe chemical burns and cuts to his face, which has resulted in permanent scarring and disfigurement. Plaintiff David Lyall's right eye has been replaced with a prosthetic device.

The Lyalls' amended complaint alleges negligence and breach of implied and express warranty against the four defendants. Specifically, the nine-count complaint is pled as follows: Count I (negligence) and Count II (breach of express and implied warranty) allege that defendant Leslie's Poolmart is liable for selling a defective container and for failing to warn of the hazards of the chlorine product and container. Count III (negligence) and Count IV (breach of express and implied warranty) allege that defendant Occidental is liable for manufacturing and designing the chlorine tablet and for failing to warn of hazards of the chlorine product and container. Count V (negligence) and Count VI (breach of express and implied warranty) allege that defendant Plastican is liable for the design and manufacture of the container and for failing to warn of the hazards of the container. Count VII (negligence) and Count VIII (breach of implied and express warranty) allege that defendant Stellar is liable for negligently packaging the container and for failing to warn of hazards associated with the chlorine product and container. Count IX alleges a loss of consortium claim against all the defendants on behalf of plaintiff Rose Ann Lyall.

Defendants Leslie Poolmart and Occidental, which are represented by the same counsel, filed a joint motion for summary judgment. Defendant Plastican joined in that motion. Defendant Stellar filed a separate motion for summary judgment.

In defendants' motions for summary judgment, defendants stress that the labeling and packaging of the chlorinator tablets complied with Environmental Protection Agency (EPA) requirements and as such, plaintiff's claims are preempted by the FIFRA. Specifically, Leslie's Poolmart and Occidental contend that the chlorine tablets were extensively tested and approved for sale by the EPA. They contend that the tablets are a pesticide within the meaning of FIFRA, and are subject to FIFRA packaging and labeling requirements as set forth at 7 U.S.C. § 136–§ 136(y) and 40 C.F.R. § 152–186. Defendants claim that Leslie's Chlorinator Tablets 1" were originally registered with the EPA in 1975 and were reregistered in 1988 under registration number 11411–3.

Plaintiffs respond that the chlorinator tablets in dispute were not subject to an EPA-approved label as the EPA documents submitted by Leslie's Poolmart in January, 1994, covered only 4, 8, 16, 25, 50 and 51 pound containers of the tablets and that there was no reregistration for the 40–pound container in dispute. Defendants respond that the relevant regulations do not require reregistration for changes in package size and net contents of a package.

Defendant Plastican joined in defendants Leslie Poolmart's and Occidental's argument that FIFRA preempts plaintiffs' claims. Plastican also raised the additional argument that the claims are preempted by Department of Transportation statutes and regulations regarding the transportation of hazardous materials, 49 U.S.C. § 5101 *et seq.*, and in particular, by the Hazardous Materials Transportation Act (HMTA), 49 U.S.C.

§ 5125. Defendants Leslie's Poolmart and Occidental filed a supplemental brief to join in Plastican's additional argument that the HMTA and related regulations preempt plaintiffs' claims. The Lyalls respond that the HMTA is concerned solely with the transportation of hazardous substances and does not preclude product liability claims arising from consumer use of a product.

Defendant Stellar filed a separate motion for summary judgment. Stellar joined in the same FIFRA and HMTA preemption arguments made by the other three defendants, but also raised an additional defense. Stellar claims that it is entitled to summary judgment because it produced and packaged the chlorine tablets in strict conformity with the requirements of Occidental. Plaintiffs respond that because Occidental was not the purchaser of the tablets at issue, complying with Occidental's instructions is no defense in this products liability action.

## ANALYSIS

### I. *FIFRA Preemption*

■ In determining whether plaintiffs' claims are preempted by FIFRA, this court is mindful that the Supreme Court has cautioned courts considering preemption defenses that Congressional intent is the "ultimate touchstone" in determining whether claims are preempted. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Where Congress has specifically enacted a provision defining the preemptive reach of a statute, as in this case via 7 U.S.C. § 136v, there is a presumption that matters beyond that reach are not preempted. *Id.* at 518, 112 S.Ct. at 2618. The court's analysis of the scope of the preemption set forth in § 136v, begins with the text of the statute itself. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). In determining whether state law claims are preempted, the Supreme Court has cautioned that there are two presumptions which should guide the court's analysis: (1) there is a presumption that Congress did not intend to preempt the historic police powers of the State, and (2) the purpose of Congress is the "ultimate touchstone." *Id.* Congress' intent is to be discerned from the statute itself and the statutory framework surrounding it. *Id.* at ——, 116 S.Ct. at 2250–51.

Defendants claim that plaintiffs' claims are preempted by FIFRA. Specifically, defendants rely on language in the statute expressly barring any state requirements for labeling or packaging which are different from the requirements imposed by FIFRA for EPA registered pesticides. Defendants cite 7 U.S.C. § 136v, which provides:

Authority of States:

(a) In general: A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity: Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v. Defendants claim that FIFRA preempts all state law claims based on a failure to adequately label or package a pesticide product. In analyzing the preemption issue in this case, the court considers separately plaintiffs' claims based on defendants' alleged failure to warn, alleged defective packaging, and alleged defective product.

### A. *Failure to Warn*

■ Defendants maintain that EPA regulations require that an applicant comply with labeling requirements before a pesticide may be sold in the United States. The EPA sets forth the required warnings and precautionary statements which must be included on the label. 40 C.F.R. § 156.10(h). Defendants also claim that a pesticide may only be registered under FIFRA if its labeling complies with EPA requirements. 40 C.F.R. § 152.112(f).

Defendants maintain that because the labeling of the chlorine tablets met EPA requirements, plaintiffs' claims for negligence and breach of express and implied warranty are preempted by the FIFRA.

Defendants cite numerous cases in support of their argument that FIFRA preempts fail-

ure to warn claims based on pesticide labels which have been approved by the EPA. *See. e.g. Welchert v. American Cyanamid Inc.,* 59 F.3d 69, 73 (8th Cir.1995) (express warranty claim based on allegedly defective labeling preempted by FIFRA); *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 129 (4th Cir.1995) (state law claims that would require defendant to alter EPA-approved labeling or packaging preempted by FIFRA); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir.1994) (common law claims based on alleged improper labeling preempted by FIFRA); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 747 (4th Cir.1993) (*Worm II*) (labeling claims preempted by FIFRA); *King v. E.I. Dupont DeNemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.) (FIFRA preempts failure to warn claims), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993) (failure to warn claims preempted by FIFRA); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.) (labeling and packaging claims preempted by FIFRA), *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Moody v. Chevron Chem. Co.,* 201 Mich.App. 232, 237, 505 N.W.2d 900, (1993) (failure to warn claims preempted by FIFRA), *appeal denied,* 447 Mich. 979, 525 N.W.2d 450 (1994). Plaintiffs have failed to cite any cases to the contrary.

Although the Sixth Circuit has not addressed the issue of FIFRA preemption, this court is guided by the holdings of the First, Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits which have all ruled that FIFRA preempts failure to warn claims based on EPA-approved labeling. These courts have ruled that § 136v(b)'s requirement that state law not impose any additional or different "requirements for labeling or packaging" forbids a state tort action based on allegedly defective warnings in the EPA-approved labeling. The Eighth Circuit explained the reasoning behind the preemption in *Welchert,* where the court stated:

Where Congress has so clearly put pesticide labeling regulation in the hands of the EPA, the [plaintiffs'] claim challenging the accuracy of the herbicide label's federally-mandated and approved statement cannot survive. To hold otherwise would be to allow state courts to sit, in effect, as super-EPA review boards that could question the adequacy of the EPA's determination of whether a pesticide registrant successfully complied with the specific labeling requirements of its own regulations. In such case, state court consideration of the label statement would be an "additional" requirement. In light of the extensive federal statutory and regulatory provisions on pesticide registration and labeling requirements, the preemptive language of [§ 136v(b)] of FIFRA must be read to preclude the [plaintiffs'] claims.

*Welchert,* 59 F.3d at 73.

FIFRA requires that pesticides be registered with the EPA. As part of the registration process, 7 U.S.C. § 136a(c)(1)(C) requires applicants to submit a complete copy of the pesticide labeling. Under the authority granted by FIFRA, the EPA has extensively regulated labeling of pesticides. 40 C.F.R. § 156.

Plaintiffs argue that their failure to warn/labeling claims are not preempted because the 40–gallon container of chlorine product in dispute was not properly registered with the EPA. Plaintiffs claim that this is so because the application documents submitted to the EPA by Leslie's Poolmart in 1994 seek registration only of the 4, 8, 16, 25, 50 and 51 pound package units, not the 40–pound unit which was involved in the incident at issue in this case. Thus, plaintiffs contend that the 40–pound unit of chlorine tablets in this case was not covered by EPA registration number 11411–3.

Defendants respond that EPA regulation 40 C.F.R. § 152.46(b)(2), which was in effect at the time of Lyall's injury, provides that changes in package size and net contents of a package do not require notification to the EPA. Specifically, 40 C.F.R. § 152.46(b)(2) provides:

(b) *Changes not needing Agency approval or* notification. The following changes may be made in a product's composition, labeling or packaging without notification to or approval by the Agency:

(2) Change in the package size and label net contents, provided no change in use

directions or requirement for child-resistant packaging would ensue. *Id.* In further support of its argument, defendants attached the affidavit of vice president and general counsel of Leslie's Poolmart stating that each container of Leslie's Chlorinator Tablets 1" are sold with the EPA-approved package bearing EPA registration number 11411–3. Plaintiffs have not refuted this evidence. Thus, the court finds that the container in question did in fact bear an EPA-approved label.

The Lyalls' argument that their failure to warn claims are not preempted is based solely on their unsupported allegation that defendants violated EPA requirements by not specifically registering the 40–pound container. Having found no merit to this argument, the court is persuaded by the overwhelming case law cited *supra,* that plaintiffs' failure to warn claims for allegedly inadequate labeling are preempted.

## B. *Defective Container Claims*

■ The court now turns to plaintiffs' claim that defendants are liable for negligent manufacture and design of the container in dispute. A manufacturing defect claim alleges that a product deviated from its intended condition. *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 683, 365 N.W.2d 176 (1984). A manufacturing defect claim relates to quality control; it requires proof that the product was an anomaly that failed to conform to the manufacturer's own standards. *Id.* A design defect claim, on the other hand, alleges that although a product was manufactured according to its intended design, it is not sufficiently safe. *Id.* Plaintiffs have submitted the testimony of two proffered experts, chemical engineer, Gordon Whitaker and Dr. Roger Schneider, in support of the design defect claims who state that the container was defective because it did not provide a mechanism for relief of foreseeable pressure build-up. Plaintiffs have failed to submit any evidence in support of a manufacturing defect claim. Defendants also have sought summary judgment on the manufacturing defect claim on the grounds that plaintiffs have submitted no evidence that the product was defective when it left the manufacturer. Because plaintiffs have failed to present any proofs in support of their manufacturing defect claim as to the container, defendants are entitled to summary judgment as to that claim. In terms of plaintiffs' defective packaging claims, the court's preemption analysis is thus limited to plaintiffs' design defect claim.

■ Defendants claim that negligent manufacture and design claims of the container are "packaging" claims which are preempted by FIFRA. Although numerous cases support the proposition that FIFRA preempts failure to warn cases, far fewer cases address negligent packaging claims. The Fourth and Eleventh Circuits have stated generally that state common law claims requiring defendants to alter the "packaging" of their FIFRA regulated pesticide are preempted by FIFRA. See *Lowe,* 47 F.3d at 129; *Worm II,* 5 F.3d at 747; *Papas,* 985 F.2d at 518. Although these cases state generally that packaging claims are preempted, these cases did not specifically address allegedly defective packaging claims.

Defendants have cited two cases in support of their argument that FIFRA preempts negligent manufacturing and design claims of the container: *Allstate Ins. Co. v. Pooltime Prod., Inc.,* 846 F.Supp. 499 (E.D.La.1994) and *Hawkins v. Leslie's Poolmart,* 965 F.Supp. 566 (D.N.J.1997). *Allstate* involves facts remarkably similar to those presented in this case. In *Allstate,* plaintiff sued defendant manufacturer of chlorine tablets alleging failure to warn, defective packaging, and defective product. Plaintiff claimed that the container was improperly designed or had a manufacturing defect which caused or allowed a chemical reaction to cause a fire. *Id.* at 500. The district court held that plaintiff's failure to warn and defective packaging claims were preempted by § 136v(b) of FIFRA which specifically provides that states may not impose any "requirements for labeling or packaging in addition to or different from those required under [FIFRA] ." *Id.* at 500–01.

The other case cited by defendants, *Hawkins,* is also factually similar to this case. *Hawkins* involved claims against the same defendant, Leslie's Poolmart, which is being

sued in this case, for injuries allegedly caused by exposure to gaseous fumes which flowed from an eight-pound container of Leslie's Chlorinator Tablets 1". The complaint alleged failure to warn, negligent packaging and negligent design and manufacture of the product. The district court held that FIFRA preempted plaintiff's state law claims based on labeling and packaging. *Id.* at 572. Only plaintiff's claims for defective manufacture or formulation of the chlorine tablets themselves survived defendant Leslie Poolmart's motion for summary judgment.

Plaintiffs argue that *Allstate* and *Hawkins* were wrongly decided. Plaintiffs maintain that the district courts in those cases failed to consider whether there were any requirements under FIFRA that applied to container design such that allowing state common law products liability claims under theories of negligent manufacture and design would be preempted. Plaintiffs are correct that the district courts in *Allstate* and *Hawkins* did not identify any EPA regulations or any statutory provisions of FIFRA setting federal requirements for the design or manufacture of defendants' packaging.

In this case, the preemption statute at issue, 7 U.S.C. § 136v(b) provides that states may not impose any "requirements for labeling or packaging in addition to or different from those required under this subchapter." In determining whether plaintiffs' defective container claims are preempted in this case, the court first considers what Congress meant by the term "packaging" in § 136v(b). Defendants argue that "packaging" includes the design and manufacture of the container which housed the chlorine. Under plaintiffs' interpretation, on the other hand, "packaging" is limited to EPA regulations governing packaging which are limited to child-resistant packaging. FIFRA provides that the Administrator of the EPA "shall ... promulgate regulations for the design of pesticide containers that will promote the safe storage and disposal of pesticides." 7 U.S.C. § 136q(e). FIFRA further provides EPA regulations define "packaging" to mean the "immediate container or wrapping, including any attached closure(s), in which the pesticide is contained for distribution, sale, con-

sumption, use or storage." 40 C.F.R. § 157.21(c).

Although FIFRA gives the EPA broad authority to regulate packaging of pesticides, such as the chlorine tablets at issue in this case, plaintiffs argue that the sole area in which the EPA has exercised its authority and has actually enacted federal requirements is in the area of child-resistant packaging. 40 C.F.R. § 157. Defendants have not refuted this point. Moreover, the court's own research confirms that unlike labeling, which the EPA has extensively regulated, the only EPA regulation regarding packaging of FIFRA pesticides relates to child-resistant packaging. Plaintiffs argue that because their packaging claims do not relate to child-resistant packaging, the imposition of state tort liability would not be a "requirement" which is "in addition to or different" than packaging requirements under FIFRA.

In support of their argument, plaintiffs seek to rely on the Supreme Court's recent opinion in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). In that case, the Court found that the Medical Device Amendments of 1976 (MDA) did not preempt state common law negligence claims against the manufacturer of an allegedly defective pacemaker. In that case, the preemption statute at issue, 21 U.S.C. § 360k, provided that "no State. may establish or continue in effect with respect to a [medical device] any requirement (1) which is different from or in addition to, any requirement applicable under the [MDA], and (2) which relates to the safety or effectiveness of the device." The Court held that plaintiffs' design defect claims were not preempted by MDA, because although the allegedly defective pacemaker in question was approved by the FDA, the pacemaker was not subject to any specific federal statutory or regulatory requirements. The pacemaker in question was approved in a rather cursory process as an equivalent to a medical device which preceded the enactment of the MDA and was grandfathered from more rigorous FDA screening. Thus, there was no federal law which would conflict with plaintiffs' state tort law claim for design defect and the Court ruled that the design defect claim was not

preempted. 518 U.S. at ——, 116 S.Ct. at 2255.

Similarly, in this case, although FIFRA allows the EPA to regulate packaging of pesticides, the only specific area which the EPA has chosen to regulate is the area of child-resistant packaging. There simply are no other federal statutory requirements under FIFRA or under the EPA regulations which govern the design of pesticide containers. Neither the container nor its design were submitted for EPA approval. Leslie's Poolmart merely certified that its packaging met EPA child-resistant packaging requirements in its application to register its chlorinator tablets with the EPA.

In interpreting the scope of preemption set forth in § 136v(b), this court is guided by the Supreme Court's admonition in *Medtronic,* that there is a presumption against preemption unless there is clear and manifest Congressional purpose to preempt state law. *Id.* 518 U.S. at ——, 116 S.Ct. at 2250. Section 136v(b) provides that states may not impose any "requirements for labeling or packaging in addition to or different from those required under this subchapter [FIFRA] ." As in the MDA discussed in *Medtronic,* where Congress delegated the authority to enforce the Act to the FDA, under the FIFRA, Congress delegated the authority to enforce the Act to the EPA. FIFRA itself does not provide any specific packaging requirements. Through FIFRA, Congress delegated authority to the EPA to regulate packaging. The EPA has only exercised this authority in the context of requiring child-resistant packaging. There are no specific design requirements for containers housing the chlorinator tablets at issue in this case. Like the pacemaker in dispute in *Medtronic,* the container in which the tablets were placed was not required to meet specific federal statutory or regulatory guidelines. Under these circumstances, where there is no actual conflict between any federal requirement and plaintiffs' state tort law claims for defective packaging, FIFRA does not preempt plaintiffs' negligent design and manufacturing claims relating to the container.

## C. *Defective Product Claims*

Having resolved plaintiffs' failure to warn and defective packaging claims, the court now turns to plaintiffs' defective product claims. In support of these claims, plaintiffs have submitted the report of their proffered expert Whitaker who states that the chlorine product itself was defective, based on the alleged failure to test and analyze the product to determine the circumstances under which gas would be released and the failure to provide protection from moisture contact. Although plaintiffs claim that Whitaker's report supports their negligent product claims in total, nothing about Whitaker's report supports plaintiffs' negligent manufacturing defect claim. Such a claim requires proof that the product deviated from the manufacturer's specifications. Plaintiffs have submitted no such proof. Plaintiffs' proofs relate solely to the question of whether the product as designed was defective. Thus, only plaintiffs' design defect claim, not their manufacturing defect claim, survive defendants' motion for summary judgment.

 The court now turns to the question of whether plaintiffs' design defect claim as to the chlorine tablet product is preempted by FIFRA, as defendants assert. The court first notes that the preemption statute at issue, § 136v(b), does not reference state requirements relating to pesticides themselves, only to "labeling and packaging" requirements. Again, this court is guided by the Supreme Court's admonition in *Cipollone* that where Congress enacts a provision defining the preemptive reach of a statute, "matters beyond that reach are not preempted." 505 U.S. at 517, 112 S.Ct. at 2618. This court also is mindful that the Supreme Court has expressly ruled that through the enactment of FIFRA, Congress has not "occupied the field" to the exclusion of the States and FIFRA preemption is narrowly limited by § 136v. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 607–14, 111 S.Ct. 2476, 2482–87, 115 L.Ed.2d 532 (1991). Because § 136v(b) limits preemption to failure to warn requirements, it does not reach plaintiffs' defective product claims which are not preempted.

Plaintiffs argue that their negligent design claim relating to the chlorine tablets survives preemption under the Fourth Circuit's decision in *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747–48 (4th Cir.1993) (*Worm II* ).[1] Plaintiffs are correct that their product claims are not preempted under FIFRA and *Worm II* supports this conclusion.

Plaintiff cites the Fourth Circuit's admonition in *Worm II:*

[g]iven the comprehensive nature of the FIFRA labeling process, it is apparent that § 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling. Claims for negligent testing, manufacturing, and formulating, on the other hand, are not preempted. The line between a claim for mislabeling and a claim for a defective product may not always be clear ... the issue may nevertheless be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label.

5 F.3d at 747–48. Defendants respond that *Worm II* is inapplicable because it was a labeling case. Defendants are incorrect.

*Worm II* involved a five-count complaint based on an allegedly defective herbicide which had been approved by the EPA as required by FIFRA. The five counts were (1) negligent failure to test, (2) negligent manufacture, (3) negligent marketing, (4) negligent failure to warn, and (5) strict liability. The district court dismissed all five-counts on the basis of FIFRA preemption. In the first appeal, the Fourth Circuit vacated and remanded the action on the grounds that the district court had overstated the scope of FIFRA preemption. *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1309 (4th Cir.1992) (*Worm I*). In *Worm I*, the Fourth Circuit explained that the preemptive effect of FIFRA is narrowly lim-

ited to claims arising out of "any common law duty that would impose a labeling requirement inconsistent with those established by FIFRA, or the EPA in its regulations." *Id.* at 1308 (citations omitted). The court further explained that "we fail to ·see how a state-imposed standard of care relating to product design, manufacture, testing, and the like, can qualify as a labeling requirement under FIFRA." *Id.* at 1307. In *Worm II*, the Fourth Circuit reviewed the district court's order granting summary judgment for defendant on the grounds that plaintiff's claims were preempted or unsupported by the evidence. The court affirmed the district court's order. In doing so, the court's opinion makes clear that plaintiffs' claims in this case for negligent design of the chlorine tablets are not subject to preemption.

In *Worm II*, the court explained that only claims for mislabeling of a product are preempted by FIFRA, not claims for a defective product. 5 F.3d at 747. Although the line may sometimes be blurry, the Fourth Circuit recommends that the test for determining whether a claim is preempted be whether the manufacturer could avoid liability by altering the label or the product. *Id.* at 748. Where the product itself, not the label accompanying the product, would have to be changed to avoid liability, FIFRA preemption does not apply. In *Worm II*, although plaintiffs made conclusory allegations that the herbicide malfunctioned or was not properly tested or marketed, plaintiffs did not submit any evidence in support of these claims. The only evidence presented in support of the Worms' claims were that the labels contained allegedly false misrepresentations about the herbicide's capabilities. Under these circumstances, the Fourth Circuit found that the Worms' complaint boiled down to a challenge to the adequacy of the warnings on the label and that those claims were preempted.

The facts in the present case are notably different from the facts presented in *Worm I* and *Worm II*, but the reasoning of those cases compels the conclusion that plaintiffs' claims here are not completely preempted.

---

**1.** Plaintiffs also argue that *Worm II* supports their defective container claims, although they concede that the decision did not address packaging claims.

Only plaintiffs' claims that the chlorine tablets were not properly labeled and failed to contain proper warnings are preempted by FIFRA. *See Lewis v. American Cyanamid Co.,* 294 N.J.Super. 53, 70, 682 A.2d 724, 733 (1996) (design defect claim of pesticide product not preempted by FIFRA); *Jillson v. Vermont Log Bldgs., Inc.,* 857 F.Supp. 985, 992 (D.Mass.1994) (negligent design and manufacturing defect claim of pesticide product not preempted by FIFRA). Plaintiffs' negligent design claims relate directly to how the product and the container it was housed in functioned, and do not merely restate plaintiffs' failure to warn claims. These claims are not preempted under FIFRA.

### D. Implied/Express Warranty Claims

■ As discussed earlier, plaintiffs have pled negligence and breach of implied/express warranty claims under the same theories of failure to warn, defective container and defective product. Plaintiffs' breach of implied warranty claims and negligence claims are subject to the same analysis and plaintiffs' failure to warn claims are preempted under either theory. *Grenier v. Vermont Log Buildings, Inc.,* 96 F.3d 559 (1st Cir. 1996). Defendants also are entitled to summary judgment as to plaintiffs' breach of express warranty claims, as plaintiffs have submitted no evidence in support of these claims and, in fact, admit that there were no written or oral warranties provided with respect to the chlorine tablets.

### II. HMTA Preemption

■ Defendant Plastican further argues that plaintiffs' claims are preempted by the Hazardous Materials Transportation Act (HMTA), 49 U.S.C. § 5101–5127. The other defendants have joined in this argument. The HMTA was enacted in 1975 to develop a national regulatory scheme for the transportation of hazardous substances. *Massachusetts v. United States Dept. of Transportation,* 93 F.3d 890, 891 (D.C.Cir.1996). Specifically, defendants rely on 49 U.S.C. § 5125(b) which provides:

(b) Substantive differences—(*l*) Except as provided in subsection (c) of this section and unless authorized by another law of the United States, a law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian tribe about any of the following subjects that is not substantively the same as a provision of this chapter or a regulation prescribed under this chapter, is preempted:

(A) The designation, description and classification of hazardous material.

(B) The packing, repacking, handling, labeling, marking, and placarding of hazardous materials.

(C) The preparation, execution and use of shipping documents related to hazardous materials and requirements related to the number, contents, and placement of those documents.

(D) The written notification, recording, and reporting of the unintentional release in transportation of hazardous materials.

(E) The design, manufacturing, fabricating, marking, maintenance, reconditioning, repairing, or testing of a packaging or a container represented, marked, certified, or sold as qualified for use in transporting hazardous materials.

49 U.S.C. § 5125(b). In arguing that the HMTA preempts plaintiffs' products liability claims, defendants rely exclusively on the language of the statute itself and have failed to cite even a single case where a court has held that state tort claims were preempted by the HMTA. Defendant Plastican further argues that it complied with United Nations' regulations for hazardous materials packaging as required under HMTA, and that these United Nations' regulations preempt state tort law. Again, although the HMTA was enacted over 20 years ago, defendants have failed to cite any case law from any jurisdiction in support of their argument that federal regulations governing the transportation of hazardous substances under the HMTA preempt state tort claims.

Plaintiffs, on the other hand, have cited several state cases where the courts held that the HMTA did not preempt state law product liability claims: *Olson v. Prosoco,*

*Inc.,* 522 N.W.2d 284, 293 (Iowa 1994); *Sawash v. Suburban Welders Supply Co.,* 407 Mass. 311, 553 N.E.2d 894, 897–98 (1990); *Haydel v. Hercules Transport, Inc.,* 654 So.2d 418 (La.App.), *writ denied,* 656 So.2d 1019 (1995); *Kemner v. Monsanto Co.,* 217 Ill.App.3d 188, 160 Ill.Dec. 192, 576 N.E.2d 1146, *appeal denied,* 142 Ill.2d 655, 164 Ill. Dec. 918, 584 N.E.2d 130 (1991). In *Olson,* the court explained that the HMTA is limited to regulating the transportation of hazardous materials and does not regulate the end use of a hazardous substance:

> There is no indication that Congress intended to preempt common law state tort remedies arising out of a consumer's end use of a hazardous material. The HMTA and its accompanying regulations are intended to regulate the shipment or transport of hazardous materials in intrastate, interstate, and foreign commerce.

522 N.W.2d at 293 (citations omitted). Defendants argue that the cases plaintiffs rely upon are factually inapposite. To the contrary, the cases plaintiffs rely upon are applicable to the facts presented here.

*Olson* arose when a foreperson was injured by a hydrochloric acid based cleaner which splashed in his eye when a closure on the drum containing the acid burst. *Id.* at 286. Plaintiff sued the manufacturer of the cleaner and the drum under strict liability and negligence. *Id.* After settling his claim with the manufacturer of the drum, his case proceeded to trial against the manufacturer of the cleaner. *Id,* Similar to the allegations in this case, in *Olson* plaintiff alleged, among other things, that defendant was negligent in failing to package the cleaner in an appropriate container and failing to test the design of the container. *Id.* at 287. In *Olson,* the court rejected defendant's argument that plaintiffs' claims were preempted by HMTA. Because plaintiff's injury had nothing to do with the transportation of hazardous materials, the court concluded that construing the HMTA to preclude plaintiff's tort claims, would be an unreasonable and contorted interpretation of Congressional intent. *Id.* at 293.

Similarly, in *Sawash,* the other case which plaintiffs rely upon but which defendants claim is factually distinguishable, the court rejected defendants' argument that plaintiffs' state tort claims were preempted by the HMTA. In *Sawash,* plaintiffs sued for injuries caused by an explosion of propane gas from a heater and resulting fire which they claim could have been prevented had the naturally odorless propane been odorized so as to alert them to the danger. 553 N.E.2d at 895. Defendants argued that plaintiffs' state tort claims were preempted by the HMTA because the propane complied with regulations for odorization issued by the Secretary of Transportation under that agency's authority as delegated by Congress under the HMTA. *Id.* The court rejected defendants' preemption argument on the grounds that the HMTA was enacted "to promote the safe transportation of hazardous materials and thereby minimize the number and extent of accidents involving carriers of hazardous materials" and had nothing to do with post-transportation injuries. *Id.* at 897–98. The court explained that there was "no overlap between the HMTA and the plaintiffs' action because the HMTA does not even attempt to regulate consumer end use of hazardous materials." *Id.* at 898.

For the same reasons, defendants' argument in this case that plaintiffs' claims are preempted by the HMTA must be squarely rejected. There is no conflict between plaintiffs' product liability action and requirements under the HMTA which govern the transportation, not the end use, of hazardous materials. Just as defendant manufacturer's compliance with HMTA regulations in *Sawash* did not save the manufacturer from liability, defendant Plastican's alleged compliance with United Nations' regulations for the transportation of hazardous materials will not immunize defendant from liability to an end user. The regulations which defendant seeks to rely upon establish general standards for packaging for transportation and do not resolve the common law duty to package the material so that it is appropriate for reasonable use. Plaintiffs' design defect claim alleges that defendants were negligent for failing to provide a vent in the container to prevent the build-up of gases. Defendants have failed to show how plaintiffs' claim actu-

ally would conflict with HMTA requirements for the transportation of the product and the Lyalls' claims are not preempted by the HMTA. Defendants' argument, which relies solely on the statute itself and is noticeably void of any case authority, lacks merit.

### III. Stellar's Customer Specification Defense

■ Finally, the court turns to defendant Stellar's argument that it is free from liability because it produced the chlorine tablets and packaged them in strict conformity with the specifications provided by co-defendant Occidental. Defendant Stellar relies on *Huff v. Ford Motor Co.*, 127 Mich.App. 287, 338 N.W.2d 387 (1983), where the court held that a manufacturer may not be held liable for furnishing a product in accordance with the plans and specifications of the purchaser, unless the plans and specifications are so obviously dangerous that they should not be reasonably followed.

Plaintiffs respond that the rule in *Huff* should not apply in this case because the ultimate purchaser David Lyall did not give Stellar the specifications for the chlorine tablets and container and Stellar knew that the tablets were packaged for use by consumers like Lyall. Defendant Stellar responds that plaintiffs' argument lacks merit because the plaintiff in *Huff* also did not provide the specifications for the product. Stellar is correct. *Huff* involved products liability claims arising out of the death of a worker who died when fumes exploded while he was painting a waste treatment tank. Plaintiff sued, among other defendants, the manufacturer who produced the tank in accordance with another defendant's specifications. Relying on case law from other jurisdictions holding that a subcontractor is not liable for manufacturing a product in accordance with the general contractor's specifications unless the specifications are obviously dangerous, the Michigan Court of Appeals held that in order to survive summary judgment, plaintiff must submit facts tending to show that the design and specifications were obviously dangerous and defective.

The rationale of the *Huff* decision applies to the facts of this case. Occidental supplied Stellar with the raw ingredients for formulating the tablets, specifications for those tablets and containers for the tablets. Stellar formulated the tablets according to Occidental's specifications and packaged them in the containers provided by Occidental. Plastican manufactured the containers. The Lyalls have sued Occidental, Plastican and Stellar. The Lyalls do not dispute that Stellar did not design or manufacture the plastic container and did not design the chlorinator tablets. Under these facts, there can be no liability against Stellar for alleged design defect in the tablets and/or containers unless plaintiffs show that the formula for the tablets and/or the design of the containers was obviously dangerous.

■ Plaintiffs have submitted sufficient evidence in support of their claim that the specifications provided by Occidental to Stellar were so obviously dangerous that they should not reasonably be followed, that plaintiffs' non-preempted claims against Stellar survive summary judgment. Plaintiffs have submitted proof that Occidental provided Stellar with information that the tablets, if exposed to moisture, could generate nitrogen trichloride which posed an explosion hazard, that chlorine gas could build up in the closed container, and that the containers were at one time equipped with a plastic liner which was later discontinued. Plaintiffs allege that Stellar was negligent in packaging the product in a ventless container without providing a moisture barrier, such as a plastic liner. Under these circumstances, plaintiffs have presented sufficient facts to create a triable issue for the jury as to whether it was unreasonable for Stellar to follow Occidental's specifications which allegedly posed obvious hazards.

### CONCLUSION

For the reasons stated above, the motions for summary judgment filed by defendants Leslie's Poolmart, Plastican, Occidental, and Stellar hereby are GRANTED IN PART as to plaintiffs' failure to warn and labeling claims, plaintiffs' breach of express warranty claims, and plaintiffs' negligent manufacturing claims ONLY. Defendants' motions for summary judgment hereby are DENIED IN

PART as to plaintiffs, claims for design defect of the chlorine product and container.

SO ORDERED.