James T. WORM, Sr.; James T. Worm, Jr.; Robert C. Worm, d/b/a Worm Brothers, d/b/a Jim Bob Farms, Copartners, Plaintiffs–Appellants,

v.

AMERICAN CYANAMID COMPANY, a body corporate of the State of Maine, Defendant–Appellee,

and

Southern States Cooperative, Incorporated, d/b/a Southern States Cooperative, Incorporated—Preston Service, a body corporate of the State of Virginia; Southern States Preston Cooperative, Incorporated, a body corporate of the State of Virginia, Defendants.

National Agricultural Chemicals Association, Amicus Curiae.

No. 93–1003.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1993.

Decided Sept. 15, 1993.

Patti Ann Goldman, Public Citizen Litigation Group, Washington, DC (Brian Wolfman, Public Citizen Litigation Group, Washington, DC; Mark I. Cantor; and Delverne A. Dressel, Baltimore, MD, on brief), for plaintiffs-appellants.

Raymond G. Mullady, Jr., Piper & Marbury, Baltimore, MD, argued (William L. Reynolds and Brigit A. McCann, on brief), for defendant-appellee.

Lawrence S. Ebner, McKenna & Cuneo, Washington, DC, on brief, for amicus curiae.

Before WIDENER and NIEMEYER, Circuit Judges, and G. ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

**OPINION**

NIEMEYER, Circuit Judge:

In *Worm v. American Cyanamid Co.*, 970 F.2d 1301 (4th Cir.1992) *(Worm I )*, we held that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*, does not, expressly or by implication, preempt the field of pesticide regulation or a more narrowly defined field, but it does preempt conflicting state law causes of action that impose a duty to provide a warning in addition to or different from federally established labeling requirements. We remanded this case to the district court for individual consideration of the plaintiffs' state law claims to determine whether they were preempted under the principles set forth in our ruling. On remand, the district court entered summary judgment in favor of the defendant, holding that the plaintiffs' common law claims were either preempted or unsupported by evidence sufficient to warrant proceeding to trial. This second appeal followed, and we now affirm.

**I**

James T. Worm, Sr., James T. Worm, Jr., and Robert C. Worm own a commercial farm in Caroline County, Maryland. In early 1987 they purchased a herbicide manufactured by American Cyanamid Company, known as "Scepter," for use on a soybean crop. The Scepter label, which had been approved by the Environmental Protection Agency (EPA) as required by FIFRA, and other promotional materials developed by American Cyanamid stated that corn could be safely planted 11 months after application of the Scepter herbicide. The Worms applied Scepter to 114 acres planted with soybeans in April and May 1987. About a year later, in May 1988, they planted sweet corn on 74 of the 114 acres.

The corn did not do well and ultimately had to be plowed under. The Worms claimed that the crop's failure was due to a "carryover effect" of Scepter. Although 11 months had passed since its application, Scepter, they contend, was still present in the soil and damaged the corn. While American Cyanamid denies that Scepter caused the damage to the Worms' corn, it has since acknowledged the possibility that the herbicide has a carryover effect beyond 11 months in drought conditions such as those that occurred in Maryland in 1987. In 1988 American Cyanamid placed an advertisement in the November edition of *Farm Journal* entitled, "How We're Handling the Scepter Carryover Problem," and prepared two brochures, "Drought '88: Tough Questions and Honest Answers About Scepter Herbicide Carryover," and "Statement on Scepter Carryover." It also distributed informational videotapes discussing the problem and the company's response to it. About the same time American Cyanamid submitted to the EPA a revised label addressing the risk of a more prolonged carryover of Scepter under drought conditions.

The Worms filed suit in state court, alleging five counts based on state law. In Count I they alleged (1) negligent failure to test and formulate Scepter adequately, (2) negligent manufacture of Scepter because it did not conform with announced specifications and formulations, (3) negligent marketing of Scepter because American Cyanamid knew or should have known that the directions for use in crop rotation were inaccurate, and (4) negligent failure to warn that it was not safe to plant sweet corn 11 months after Scepter's application. In Counts II, III, and IV the Worms alleged breach of express and implied warranties that corn could be planted safely 11 months after Scepter's application. In Count V they alleged strict liability for marketing Scepter in a defective condition due to inadequate warnings. After American Cyanamid removed the action to federal court, it filed a motion for summary judgment, arguing that the Worms' claims were preempted by FIFRA and the EPA's approval of the Scepter label. The district court agreed and dismissed all the state law claims, concluding categorically that they were preempted.

After we vacated that judgment in *Worm I*, remanding the case for individual consideration of the state claims to determine whether they were preempted, the district court reviewed the complaint and the record in light of our ruling. On Count I (alleging negligence) it found that the allegations of negligent testing, formulating, and manufacturing were not supported with "sufficient admissible evidence to create a genuine dispute of material fact" and therefore entered summary judgment on those claims in favor of American Cyanamid. The remaining allegations of negligence, it concluded, were "directed at the representations made on the Scepter label, or in the materials accompanying the product" and were therefore preempted by FIFRA. On Counts II, III, and IV (alleging breach of express and implied warranties) the court concluded that these claims were based only on Scepter's labeling materials and were therefore preempted. Finally, on Count V (alleging strict liability) the court noted that the Worms did not claim that a defect existed in the product itself, but only that "American Cyanamid's failure to provide an adequate warning of [Scepter's] carryover effects rendered it an unreasonably dangerous product." Because the claim was based on alleged inadequacies of an EPA-approved label, the court concluded that that claim, too, was preempted.

## II

The Worms, urging a most narrow interpretation of FIFRA's preemptive scope, contend that (1) because American Cyanamid was free to provide warnings that would have prevented the Worms' crop failure and because FIFRA does not prohibit it from providing those voluntary warnings, a claim for damage caused by American Cyanamid's failure to provide the warning is not preempted; (2) the inadequacy of the labeling of Scepter that formed the basis for the Worms' common law claims alleging a failure to warn and breach of warranty also constitute a violation of FIFRA and therefore those claims are not inconsistent with and preempted by FIFRA; and (3) by reason of the Supreme Court's recent decision in *Cipollone v. Liggett Group*,

*Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), breach of warranty claims based on representations *voluntarily* made are not preempted.

■ In approaching these issues we begin with a review of our holding in *Worm I,* which construed the preemptive scope of FIFRA, 7 U.S.C. § 136v(b). Section 136v(b) provides that a state may not "impose or continue in effect any requirements for labeling or packaging [herbicides] *in addition to or different from* those required under this subchapter" (emphasis added). In *Worm I* we held that the "language of § 136v(b) manifestly ordains the preemption of the establishment or enforcement of any common law duty that would impose a labeling requirement inconsistent with those established by FIFRA." 970 F.2d at 1308. Thus we noted that if to comply with state law a manufacturer must violate federal law, the state law must yield. State law must similarly yield "if in complying with it, [a manufacturer] would be frustrating the objectives and purposes of federal law." *Id* at 1306. The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use of pesticides in both intrastate and interstate commerce. *Id.* at 1305.

Five days after we decided *Worm I,* the Supreme Court decided *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992),[1] in which the Court considered the preemptive scope of the Federal Cigarette Labeling and Advertising Act of 1965 and the Public Health Cigarette Smoking Act of 1969, two statutes that also contain explicit language addressing the preemptive scope of their labeling requirements. Articulating a specific approach to interpreting a statute that expressly addresses preemption, the Court limited the task to first determining whether the relevant provisions reliably indicate congressional intent with regard to preemption of state authority, and second, if so, to interpreting the express language. —— U.S. at ——, 112 S.Ct. at 2618. That restrictive analysis would appear

to require no change in the analysis of *Worm I* and the Worms do not argue that our conclusions in *Worm I* were incorrect or inconsistent with *Cipollone.* Instead, they argue that § 136v(b) must be applied sufficiently narrowly to assure the continuing vitality of state common law actions based on a failure to warn that are not inconsistent with the warning requirements of FIFRA.

A review of what FIFRA does require reveals the establishment of an involved process of review by the EPA, culminating in approval of the label under which a product may be marketed. FIFRA requires manufacturers to submit draft language addressing a number of different topics, including ingredients, directions for use, and adverse effects of the products. 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50 & pt. 156. A final label must be submitted to the EPA prior to registration. 40 C.F.R. § 156.10(a)(6). All but the most technical changes require a manufacturer either to submit an application for an amended registration or notify the agency, which may determine that an application is required. *See id.* § 152.44 & .46. In addition, it is a violation of FIFRA for any person to alter, in whole or in part, any required labeling. 7 U.S.C. § 136j(a)(2). Given the comprehensive nature of the FIFRA labeling process, it is apparent that § 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling. Claims for negligent testing, manufacturing, and formulating, on the other hand, are not preempted. The line between a claim for mislabeling and a claim for a defective product may not always be clear. If Scepter, for example, had been formulated to remain only 11 months in the soil and in fact it remained 15 months, would the deficiency be a misrepresentation of the label or a defect in the product? While the hypothetical is selected to blur the distinction, the issue may nevertheless be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in

---

1. *Worm I* was decided on June 19, 1992, and *Cipollone* on June 24, 1992.

seeking to avoid liability for the error, would choose to alter the product or the label.

In this case the answer is more readily ascertainable. The Worms never maintained, beyond the conclusory allegations of the complaint, that the product itself functioned improperly or that the company was negligent in its manufacture or testing. As contained in the opening sentence of their brief on appeal, the Worms state that they "seek damages for the failure of their sweet corn crop *caused by the defendant American Cyanamid Company's false representation that they could safely grow corn eleven months after applying the herbicide Scepter*" (emphasis added). The only representations advanced in the record were those made on labels and literature distributed with the herbicide. To the extent that the Worms challenge the adequacy of the warnings on the labeling, their claims are preempted, as we held in *Worm I*.

The Worms' argument that their state law claims are based on duties not inconsistent with those imposed by FIFRA has no merit. Because the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one. Nor does it make any difference that the standard the Worms seek to apply is one imposed by the common law rather than by positive legislative or executive enactment. Any distinction between the two is "illusory." *Worm I*, 970 F.2d at 1307.[2]

If a state elects to recognize that a breach of a FIFRA-created duty forms the basis for a state remedy, we have held that it is permitted to do so by 7 U.S.C. § 136v(b). *Worm I*, 970 F.2d at 1308. Allowing such actions, however, is substantially distinguishable from accepting the argument that the state common law duty to warn is not "in addition to or different from" the federally defined duty. Cf. *Moss v. Parks Corp.*, 985

F.2d 736, 741–42 (4th Cir.1993) (considering actions related to warnings required under the Federal Hazardous Substances Act). The other circuit courts that have considered FIFRA preemption in the wake of *Cipollone* and after our decision in *Worm I* have all concluded similarly that common law causes of action alleging that the language of an EPA approved label failed to adequately warn of risks associated with a pesticide are preempted. *See King v. E.I. DuPont de Nemours and Co.*, 996 F.2d 1346, 1347 (1st Cir.1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.1993) *(Papas II )*, pet. for cert. filed, June 7, 1993; *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.1993) *(Arkansas–Platte II )*, pet. for cert. filed, May 10, 1993.

■ The Worms also argue that even if American Cyanamid could not add language to its label, it could comply with any common law duty through statements made in other ways, for example through point-of-sale notices. To allow the Worms to argue that the warning language which appears on point-of-sale or other promotional material is inadequate when that language is identical to that approved by the EPA would in effect allow the establishment of an additional or different state law requirement concerning adequate warning language. *See Papas II*, 985 F.2d at 519.

■ Finally, the Worms contend that American Cyanamid could voluntarily make additional disclosures and representations about Scepter and that it in fact did so when it modified its label to state that in drought conditions Scepter may have a greater carryover effect. They argue that American Cyanamid's failure to make a voluntary disclosure earlier and its breach of express warranties regarding Scepter's carryover effect fall in the range of voluntary conduct found

**2.** We additionally note that in interpreting the language of the 1969 Cigarette Act, which provides that "no requirement or prohibition based on smoking and health shall be imposed under State law," Justice Stevens similarly concluded that common law duties fall within the scope of "requirements." *Cipollone*, —— U.S. at ——, 112

S.Ct. at 2620 (plurality opinion). While Justice Stevens was writing only for a plurality of four, Justice Scalia, joined by Justice Thomas, also agreed with this conclusion. —— U.S. at ——, 112 S.Ct. at 2634 (Scalia, J., concurring in the judgment in part and dissenting in part).

not preempted by *Cipollone.* Relying on *Cipollone,* they argue that "a federally mandated warning does not preempt a state law remedy for breach of a contractual commitment that is voluntarily undertaken." *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2622 (stating that although the preemptive provision of the Public Health Cigarette Smoking Act of 1969 prohibits additional requirements, "a contractual commitment voluntarily undertaken" is not preempted) (plurality opinion).

This argument, however, fails to recognize that American Cyanamid's inclusion on its label of the information that corn could be safely planted 11 months following application of Scepter was not voluntary. Such statements concerning rotational crop use are expressly required by the regulations adopted under FIFRA. *See* 40 C.F.R. § 156.10(i)(2)(x)(B). Moreover, this argument also suggests that what was approved by the EPA was inadequate for purposes of establishing a state cause of action. Because the Worms point to no statement made by American Cyanamid other than that required and approved by the EPA, their warranty claims are preempted.

To the extent that the Worms' claims challenge, by whatever state cause of action, the adequacy of information provided by American Cyanamid on its labeling, the claims are preempted by FIFRA. The Worms did, however, also allege in their complaint state law claims for negligent testing, formulation, and manufacture which would not be preempted. But in connection with those claims, the district court entered summary judgment because the evidence advanced to establish the claims was insufficient to require a trial. Our review of the record confirms the district court's ruling.

## III

■ Finally, the Worms contend that the district court erred in denying their motion for additional discovery after the case was remanded. By letter dated August 1, 1992, the Worms wrote the district judge requesting an additional eight months of discovery to review testing data and to supplement their initial responses. American Cyanamid opposed this request and, on August 5, 1992, renewed its motion for summary judgment filed January 15, 1991. The district court determined that "ample time to conduct discovery" had been provided to the parties, denied the additional request for discovery, and proceeded to rule on the motion for summary judgment.

■ In considering a motion for summary judgment, under Federal Rule of Civil Procedure 56(c), a court must provide "adequate time for discovery" to a party that has failed to show the existence of a genuine issue of material fact before granting the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this case the records appear to confirm that adequate time was provided. After American Cyanamid filed its answer in the district court, the court, by order dated June 19, 1990, established dates for completing discovery and filing motions for summary judgment of October 15 and November 5, 1990, respectively. Pursuant to a joint motion of the parties, the court extended these dates to December 21, 1990, and January 15, 1991, respectively. On January 15, 1991, American Cyanamid filed its motion for summary judgment and the Worms thereafter responded. While the motion was pending, the court held a pretrial conference at which it scheduled a trial date. At no time, to our knowledge, after the cut-off of discovery, at the pretrial conference, or in the papers addressing the motion for summary judgment, did the Worms complain about the need for further discovery.

It is well established that management of discovery is a matter that is within the discretion of the district court. *See Erdmann v. Preferred Research, Inc.,* 852 F.2d 788, 792 (4th Cir.1988). Our review of the record in this case reveals no abuse of that discretion.

For the reasons given the judgment of the district court is affirmed.

*AFFIRMED.*