Tina Louise **JEFFERS**, Plaintiff,

v.

**WAL–MART STORES, INCORPORATED, et al., Defendants.**

No. Civ.A. 3:99–0274.

United States District Court, S.D. West Virginia, Huntington Division.

Feb. 8, 2000.

As Amended Feb. 23, 2000.

Stuart Calwell, Charleston, WV, John Scaggs, Charleston, WV, for plaintiff.

James McQueen, Jr., Charleston, Kimberly E. Williams, Charleston, for Wal-Mart.

Joseph M. Farrell, Jr., Paul T. Farrell, Huntington, WV, C.O. Wright, M.D., for St. Mary's Hospital.

Thomas E. Scarr, Huntington, Mike A. Frye, Huntington, for United Industries Corporation.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Currently pending before the Court is Defendant United Industries' motion for judgment on the pleadings or, in the alternative, for summary judgment. In accordance with this Court's Order, dated February 3, 2000, and for the reasons that follow, the Court **FINDS** that Plaintiff's state law claims regarding the labeling of certain pesticides are preempted by the Federal Fungicide, Rodenticide and Insecticide Act of 1947, as amended, 7 U.S.C. §§ 136 et seq. ("FIFRA"). However, the Court **FINDS** that Plaintiff's state law claims regarding the packaging of pesticides at issue are not preempted by FIFRA. Accordingly, the Court **GRANTS** Defendant's motion for judgment on the pleadings to the extent Plaintiff's state law claims address labeling issues and **DENIES** Defendant's motion to the extent Plaintiff's state law claims regard packaging issues.

### I. Statement of the Case

Plaintiff worked as a maintenance employee at Wal-Mart's Huntington, West Virginia store. Plaintiff's Complaint alleges that, during the course of her employment, she was exposed to various toxic substances and, as a result, sustained various injuries. She alleges that, as part of her job, she was instructed to clean up certain pesticide products which fell from a shelf in the lawn and garden department. According to the Complaint, at least one pesticide product container broke and leaked its contents onto the floor. Plaintiff claims that she suffers permanent injuries from inhalation of fumes and other exposure to the pesticides as a result of her clean-up efforts. Plaintiff filed the instant action against six defendants. The relevant portion of her Complaint alleges products liability claims against Defendants United Industries, S.C. Johnson & Sons, and Clorox. These claims, in part, allege that the products were defectively packaged and contained inadequate warnings.

Defendant United Industries filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment. Defendant's motion alleges that Plaintiff's claims based on inadequate labeling and packaging are preempted by FIFRA. Plaintiff concedes that the labeling portion of her claim is preempted by FIFRA.

She, however, contends that the product liability claim based on defective packaging is not preempted.

With regard to the packaging issue, Defendant argues that FIFRA, by its plain language, expressly preempts state law "requirements for labeling and packaging" that are "in addition to or different from" those required pursuant to FIFRA. Defendant cites several district court cases which have held that similar defective container claims are preempted by FIFRA. After realizing it cited a case which had been overruled by the Third Circuit, Defendant filed a supplemental memorandum. In that memo, Defendant argues that the Fourth Circuit has, in dicta, indicated that packaging claims would be preempted. Defendant also argues that allowing the state law claim would undermine the policies of FIFRA. Defendant also asserts that the Third Circuit opinion on which Plaintiff relies places significant weight on a readily distinguishable United States Supreme Court case. Finally, Defendant argues that the EPA's failure to regulate all aspects of packaging "should not defeat the express grant of preemption contained in FIFRA."

Plaintiff argues in response that preemption of packaging claims under FIFRA is limited to the area of child-resistant packaging. In essence, Plaintiff argues that because the EPA has not taken a comprehensive approach to packaging regulation, FIFRA does not preempt state law claims based on packaging. In addition, Plaintiff argues that the Third Circuit decision is consistent with Fourth Circuit case law.

## II. Standard of Review

Rule 12(c) [1] of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). If materials outside the pleadings

are "presented to and not excluded by the Court," then the motion should be treated as one for summary judgment under Rule 56. The district court applies the same standard under Rule 12(c) as it applies under Fed.R.Civ.P. 56(c). *See King v. Gemini Food Servs. Inc.,* 438 F.Supp. 964, 966 (E.D.Va.1976) aff'd, 562 F.2d 297 (4th Cir.1977). Therefore, "[u]nder Rule 12, judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *See Bell Atlantic—Maryland v. Prince George's Co., Maryland,* 49 F.Supp.2d 805 (D.Md.1999), (citing *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290–291 (3d Cir.1988)).

## III. Discussion

 The Constitution dictates that the laws of the United States "shall be the supreme law of the land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Since 1819, the Supreme Court has operated under the premise that any state law that conflicts with federal law is "without effect." *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *see also,* M'Culloch v. Maryland, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819). There are two presumptions with regard to federal preemption of state law that courts adhere to in preemption analysis. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). First, there is "the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Second, courts deciding preemption issues must be mindful that " '[t]he purpose of Congress is the ultimate touchstone' of

---

**1.** The Court considers this motion as appropriate as a motion for judgment on the pleadings under Rule 12(c) rather than Defendant's alternative of summary judgment. The Court

has not considered documents, other than the pleadings, in deciding Defendant's motion. Accordingly, a discussion of the summary judgment standard is not necessary.

preemption analysis." *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)).

 Where the preemptive scope is set forth explicitly in the language of the statute[2], there is "no need to infer congressional intent to preempt state laws from the substantive provisions" of the statute. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Although a statute's language might indicate that certain state laws are preempted, the courts must still "identify the domain expressly preempted" by the language. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In determining the scope of the preemption provision and, thus, deciding whether a preemption provision actually preempts the state law at issue, courts look first to the language of the preemption provision itself. *See Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)(Kennedy, J., concurring in part and concurring in judgment). However, a court's "interpretation of that language should not occur in a contextual vacuum. Rather, that interpretation is informed by" the two presumptions mentioned above which, in essence, amounts to an analysis of congressional intent. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

### A. FIFRA Preemption of Common Law "Labeling" Claim

 It is now well-settled that FIFRA preempts state common law negligence, warranty and strict liability claims based on labeling issues. *See, e.g., Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993) ("Worm I"); *Worm v. American Cyanamid Co.,* 970 F.2d 1301, 1308 (4th Cir.1992) ("Worm II"). Plaintiff concedes that her state common law claims based on the labeling of the pesticides are preempted. Therefore, the Court **GRANTS** Defendant's motion for judgment on the pleadings as to Plaintiff's state common law "labeling" claims.

### B. FIFRA Preemption of Common Law "Packaging" Claim

Neither the Supreme Court nor the Fourth Circuit have determined the extent to which FIFRA preempts state common law claims based on packaging defects. While the Fourth Circuit has stated, generally, that FIFRA preempts packaging claims, the court has not specifically addressed a claim which alleges defective packaging such as the one presented before this Court. *See Lowe v. Sporicidin International,* 47 F.3d 124 (4th Cir.1995); *Worm II,* 5 F.3d at 744. Both *Lowe* and *Worm II* involved state law misrepresentation and failure to warn claims based only on labels or advertisements. *See id.*

This Court's task is to determine whether FIFRA's preemptive scope reaches the Plaintiff's negligence, strict liability, and warranty claims based on defective packaging. The Fourth Circuit cases cited by Defendant do not address the specifics of packaging claims, and, therefore, have limited relevance to the case before the Court.

#### 1. Textual Analysis of Section 136v

 In analyzing the issue, the Court should look, first, at the text in conjunction with congressional intent. The Court, in looking at the text, should be mindful that the historic police powers of the States are not to be preempted unless such is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S.

---

**2.** Section 136v of FIFRA, 7 U.S.C. § 136v, provides:

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [the Act].

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this [Act].

218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The plain text of the preemption section indicates that FIFRA preempts state-imposed requirements[3] that are "in addition to or different from [those enacted by the EPA]." § 136v(b). Since no EPA regulations exist with regard to the subject matter of Plaintiff's claims, her common law causes of action are not "in addition" to any EPA regulation.[4] Nor are such claims "different from" any EPA regulation. As the Third Circuit has noted, "[w]hen no federal packaging requirements have been established, logic dictates that a state law packaging requirement cannot be different from or in addition to the absent federal requirement." *See Hawkins v. Leslie's Pool Mart, Inc.,* 184 F.3d 244 (3d Cir.1999).

The legislative history of section 136v supports this conclusion. Congress' intent in enacting section 136v was to "leave to the States the authority to impose stricter regulation on pesticides use than that required under the Act." Sen.Rep. No. 92–838 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021. The only regulations "required under the Act" are those that the EPA implements, and the EPA has not enacted any regulations regarding packaging other than regulations relating to child-resistant packaging. *See* 40 C.F.R. §§ 157.20 et seq. Therefore, any requirements imposed by the State through Plaintiff's common law claims are not "more strict" than the non-existent requirements under the Act. By giving states the green light to enact more stringent use requirements, Congress manifested its intent not to impose blanket preemption of state law requirements. In addition, by granting

the EPA regulatory authority to protect the public, as discussed below, Congress did not intend to eliminate state regulation pending the EPA's exercise of its authority.

■■ Finally, Plaintiff's position is supported by Congress' failure to discuss complete preemption when enacting FIFRA. Since one of the preemption presumptions requires the intent to preempt state law to be the "clear and manifest purpose of Congress," the Court should not preempt Plaintiff's packaging claims on such weak grounds. In *Medtronic,* the Supreme Court noted that

> under [the defendant's] view of the statute, Congress effectively precluded state courts from affording state consumers any protection from injuries resulting from a defective medical device. Moreover, because there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied right of action, Congress would have barred most, if not all, relief for persons injured by defective medical devices. [Defendant's] construction of [the provision] would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation.

*Medtronic,̇ Inc. v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). A finding of preemption, in the present case, would also preclude state common law claims in an area that the EPA has not provided any regulation. Similar to the MDA, no private right of action exists under FIFRA.[5] *See, e.g., Thomas v. Un-*

---

**3.** "Requirements" includes both positively-enacted legislation or agency regulations and common law actions for damages. *See Medtronic v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). However, the inclusion of common law actions within the definition of "requirement" does not reach so broadly so as to preclude all damage actions. *See id.*

**4.** The only EPA regulations regarding packaging address the topic of child-resistant pack-

aging. *See* 40 C.F.R. §§ 157.20 et seq. The parties concede that Plaintiff's claims do not involve child-resistant packaging.

**5.** A private right of action arising from a federal statute is one that is judicially imposed to award compensation to private litigants who are harmed by actions prohibited by the statute. *See, e.g., Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946,

**780**

*ion Carbide Agr. Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1308 (4th Cir.1992); *Rodriguez v. American Cyanamid Co.*, 858 F.Supp. 127 (D.Ariz.1994). Preemption would have an effect that is diametrically opposed to the purpose of FIFRA's grant of authority to the EPA regarding pesticide packaging—to "protect children and adults from serious injury or illness resulting from accidental ingestion or contact with pesticides." 7 U.S.C. § 136w(c)(3). As the Court stated in *Medtronic*, it is "difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). This is so especially where the preemption would leave a person whom Congress intended to protect without a remedy.

2. *Structure and Purpose of FIFRA*

The Court should also consider "the structure and purpose of the statute as a whole as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers and the law." *Medtronic, Inc. v.*

*Lohr*, 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The Supreme Court has recognized that FIFRA is a "comprehensive regulatory scheme." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 601, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). The Supreme Court has indicated, however, that Congress did not intend "to occupy the entire field of pesticide regulation." *See id.* at 613, 111 S.Ct. 2476. The Court observed, therefore, that section 136v of FIFRA resulted in "a narrow preemptive overlap." *Id.*

The text of FIFRA does not, by its own terms, regulate specific aspects of packaging. Rather, Congress give the Environmental Protection Agency the authority to regulate pesticide packaging. *See* 7 U.S.C. § 136q(e) (EPA has authority to promulgate regulations "for the design of pesticide containers that will promote the safe storage and disposal of pesticides."); 7 U.S.C. § 136w(c) (authorizing the EPA Administrator to "establish standards ... with respect to the package, container, or wrapping in which a pesticide or device is enclosed for use or consumption, in order to protect children and adults from serious illness or injury resulting from accidental ingestion or contact").

This express grant of authority to the EPA to enact regulations distinguishes the

60 L.Ed.2d 560 (1979). It is well-settled among the lower federal courts that there is no federal private right of action under FIFRA. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983); *In re Agent Orange Product Liability Litigation*, 635 F.2d 987 (2d Cir. 1980); *Lescs v. Dow Chemical Co.*, 976 F.Supp. 393 (W.D.Va.1997); *Rodriguez v. American Cyanamid Co.*, 858 F.Supp. 127, 130–131 (D.Ariz.1994) (providing a detailed review of cases which have held that FIFRA does not create a private right of action). The Court notes that this principle is not inconsistent with the Fourth Circuit's decision in *Worm II* wherein the court stated "if a state elects to recognize that a breach of a FIFRA-created duty forms the basis for a state remedy, we have held that it is permitted to do so by [FIFRA]." *Worm II*, 5 F.3d at 747 (citing *Worm I*, 970 F.2d at 1308). In *Worm I*, the court, prior to stating that FIFRA does not create a private right of action, stated that "if

[a state] common law recognizes a tort based on breach of a federally imposed standard, the [plaintiffs] would be able to pursue that claim without conflicting with federal law." *Worm I*, 970 F.2d at 1308. So, that a federal private right of action does not exist under FIFRA does not, automatically, restrain the states from basing a state common law action for the violation of a standard imposed under FIFRA. The Court notes, however, that even if a private right of action or a state law claim based on the breach of a federally imposed standard existed, such would be inapposite with regard to the issue before this Court. Plaintiff would still have no remedy for her packaging-based claims because neither Congress nor the EPA has imposed packaging regulations under FIFRA. The absence of regulations results in an absence of standards on which to base such causes of action. Such lack of recourse is contrary to the purpose of FIFRA.

issue of FIFRA preemption from the pre-emption issue decided by the Supreme Court in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone,* the Supreme Court noted that the 1965 version of the Public Health Cigarette Smoking Act, 15 U.S.C. § 1331 et seq., contained a preemption provision that supersedes "only positive enactments by legislatures or administrative agencies that mandate particular warning labels" and not state law damages claims.[6] *Cipollone,* 505 U.S. at 518, 112 S.Ct. 2608. In so holding, the Court emphasized the importance of Congress' enactment of the exact warning required within the Act itself in its decision. When read together with the preemption provision which prohibits a state from requiring "statement[s] relating to smoking and health ... in the advertising of [properly labeled] cigarettes," the Court found that only positively enacted law was preempted. *Cipollone,* 505 U.S. at 518, 112 S.Ct. 2608. The FIFRA preemption issue presented in this case differs in that Congress did not set forth the exact packaging requirements necessary and then, in turn, prohibit states from enacting different packaging requirements. Rather, Congress gave the authority to the EPA to set forth regulations which the Administrator deems appropriate to meet the purposes of the Act.

The EPA has chosen to regulate only in the area of child resistant packaging. *See* 40 C.F.R. §§ 157.20 et seq. "[W]here, as here, a preemption provision is dependent on government regulations, we cannot extend the reach of that provision to areas not actively regulated by the federal government. In other words, the EPA's failure to promulgate packaging regulations outside the area of child-resistant packaging is fatal to [the defendant's preemption argument]." *Hawkins v. Les-*

*lie's Pool Mart, Inc.,* 184 F.3d 244, 253 (3d Cir.1999). As in *Medtronic,*

this [is] quite unlike a case in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers. Rather, the federal requirements reflect important but entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation that the statute or regulations were designed to protect from potentially contradictory state requirements.

*Medtronic,* 518 U.S. at 501, 116 S.Ct. 2240. The absence of packaging approval procedures and regulations, combined with the Supreme Court's holding in *Medtronic,* dictates that Plaintiff's packaging claims are not preempted.

This analysis is consistent with the analysis used by the Fourth Circuit in finding state law labeling claims preempted by FIFRA. *See Worm II,* 5 F.3d at 747. In *Worm II,* the Court held that "[g]iven the comprehensive nature of the FIFRA labeling process, it is apparent that § 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling." *Id.* By relying specifically on the comprehensive nature of the labeling process, set out in both the statute and the EPA-enacted regulations, the opinion indirectly supports a finding, in

---

6. The 1965 preemption provision stated
 (a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package;
 (b) No statement relating to smoking and health shall be required in the advertising

of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
The 1969 Act changes include changing the word "statement" in subsection (b) to the phrase "requirement or prohibition."

this case, that Plaintiff's state law packaging-based claims are not preempted.

### 3. *Analysis of Relevant Case Law*

A conclusion that FIFRA does not preempt Plaintiff's state law claims is supported by the Supreme Court's recent decision in *Medtronic* and all of the lower court decisions addressing the issue since *Medtronic*.

In *Medtronic*, the Supreme Court was faced with the issue of whether Plaintiff's common law products liability claims regarding a failed pacemaker were preempted by section 360k of the Medical Device Amendment of 1976. The Court found, first, that Congress, in enacting the provision (which is similar to the FIFRA preemption provision at issue here), did not intend to preclude all common law causes of action. *See Medtronic*, 518 U.S. at 486–487, 116 S.Ct. 2240. In so finding, the Court looked to the language used by the legislature (noting that "requirement" is an odd word with which to preclude all common law damages actions) and the purpose of the Act itself. *See id.* The Court emphasized that if all common law damages actions were preempted, then the community protection purpose of the Act was not satisfied. *See Medtronic*, 518 U.S. at 486, 116 S.Ct. 2240. The Court noted that without any regulations specific to the devices at issue, without a private right of action under the statute, and without a state common law claim, the Plaintiff would have no recourse in the courts for damages caused by the medical device. *See id.* The preemption, therefore, would undermine congressional purpose. The Court held, rather, that Plaintiff's claims had to be analyzed claim by claim with the federal law to discern whether the individual claim is preempted by the Act. *See Medtronic*, 518 U.S. at 501, 116 S.Ct. 2240. The Court then considered Plaintiff's individual common law claims and found that none were preempted by the federal law. *See Medtronic*, 518 U.S. at 490–500, 116 S.Ct. 2240.

The defendant in *Medtronic* attempted to argue that the language of the preemption provision within the federal statute preempted all of Plaintiff's common law products liability claims based on the defective medical device. *See Medtronic*, 518 U.S. at 495, 116 S.Ct. 2240. The Court rejected the argument. *See id.* Similarly, Defendant, in this case, argues that the clear language of FIFRA preempts Plaintiff's state law claims. Based on this Court's analysis and the reasoning in *Medtronic*, Defendant is incorrect. Defendant attempts to distinguish *Medtronic* by arguing that FIFRA, unlike the MDA, does not contain a provision allowing the EPA to exempt certain requirements from preemption. Defendant's reliance on this fact does not support its argument. First, both statutes give the administrative agencies the authority to enact regulations and rely on such regulations for the implementation of the statute. In both cases, if the agency does not act, then there are no regulations governing the subject matter of the statute. That the MDA gives the FDA the explicit right to exempt certain "requirements" from the preemptive effect of its regulations is inapposite.

Furthermore, the *Medtronic* Court only mentioned the "exemption" grant by Congress to support its finding that preemption does not arise directly from the enactment of the statute. *See Medtronic*, 518 U.S. at 496, 116 S.Ct. 2240. Such is the case with FIFRA. There are no statutory prohibitions or regulations within FIFRA, unlike those present in *Cipollone*, that could preempt state law. Rather, Congress, in FIFRA, gave the EPA the authority to enact regulations. See 7 U.S.C. §§ 136q(e); 136w. As stated in *Medtronic*, "[i]n most cases a state law will be preempted only to the extent that the FDA has promulgated a relevant federal 'requirement.'" *Medtronic*, 518 U.S. at 494, 116 S.Ct. 2240. The same has been held true with regard to FIFRA; the only state "requirements" that are preempted are those which directly conflict with the regulations enacted pursuant to FIFRA. *See Lyall v. Leslie's Poolmart*, 984 F.Supp. 587 (E.D.Mich.1997) ("where there

is no actual conflict between any federal requirement and plaintiffs' state tort law claims for defective packaging, FIFRA does not preempt plaintiffs' [claims]"). Like the FDA, the EPA is "uniquely qualified to determine whether a particular form of state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Medtronic*, 518 U.S. at 494, 116 S.Ct. 2240. The Court, then, recognized the grant of exemption as confirmation of the preemptive effect that the FDA regulations will have on state law. *See id.* Congress' explicit grant of authority to the EPA to enact regulations regarding packaging has the same effect. *See, e.g.*, 7 U.S.C. § 136q; 7 U.S.C. § 136w.

Plaintiff's position is further bolstered by the relevant cases involving FIFRA preemption since *Medtronic*. The Third Circuit has recently addressed the precise issue presented to this Court and has held that FIFRA only preempts state law claims in the "narrow area" of child-resistant packaging, absent some showing that the EPA has specifically approved of the packaging methods for a pesticide product. *See Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 255 (3d Cir.1999). In *Hawkins*, the plaintiff was a swimming pool owner who had purchased a container of chlorinator tablets from the defendant. The plaintiff alleged that she was injured by exposure to gaseous fumes which escaped from the container when she opened it. She alleged that the manufacturer was negligent and strictly liable in failing to package the tablets so as to prevent the type of injury she suffered. After discussing *Medtronic*, the Third Circuit held that "unless the EPA has specifically considered the packaging methods for a pesticide product, the domain preempted [by FIFRA] is the narrow area of child-resistant packaging." *Hawkins*, 184 F.3d at 255.

The Eastern District of Michigan considered a similar claim in 1997 and found that FIFRA did not preempt the plaintiff's packaging claims. *See Lyall v. Leslie's Poolmart, Inc.*, 984 F.Supp. 587 (E.D.Mich.1997). That case, after consid-

ering *Medtronic*, found that Congress delegated authority of packaging regulation to the EPA which has not acted outside the area of child-resistant packaging. *See id.* at 594. The Court then held that "like the pacemaker in dispute in *Medtronic*, the container in which the tablets were placed was not required to meet specific federal statutory or regulatory guidelines ... Where there is no actual conflict between any federal requirement and plaintiff's state tort law claims for defective packaging, FIFRA does not preempt [plaintiff's claims]." *Lyall*, 984 F.Supp. at 594.

The only cases cited by Defendant to support a finding of FIFRA preemption were decided prior to *Medtronic*. For example, in *Allstate v. Pooltime Products, Inc.*, 846 F.Supp. 499 (E.D.La.1994), a plaintiff brought state law defective packaging claims against a chlorinated tablet manufacturer. The court found that her state law packaging claims were subject to blanket preemption under the Supreme Court's holding in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407, which recognized the word "requirement" as including state law actions for damages. *See id.* at 502, 112 S.Ct. 2608. However, it was not until the *Medtronic* decision that the Court indicated that the term "requirements" does not automatically preempt all state common law claims. Given the more recent decision in *Medtronic*, therefore, the *Allstate* holding does not necessarily stand. Under *Medtronic*, common law damages actions are not automatically preempted. *Medtronic*, 518 U.S. at 501, 116 S.Ct. 2240. Rather, a court must compare the state law claim with the federal law to discern whether it is one which Congress intended to preempt. *Id.*

As discussed above, the Fourth Circuit decisions relied upon by Defendant are of limited relevance. The court did state, in general terms, that state law packaging and labeling claims were preempted by the express language of section 136v. *See*

*Lowe v. Sporicidin International,* 47 F.3d 124 (4th Cir.1995); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993) ("*Worm II*"). In fact, the analysis undertaken by the Fourth Circuit in these cases supports a ruling that FIFRA does not preempt Plaintiff's state common law claims based on defective packaging. When analyzing the particular state law labeling-based claims at issue, the court, in both cases, relied heavily on the comprehensive nature of EPA regulations with regard to labeling in finding plaintiffs' claims preempted by federal law. *See Lowe,* 47 F.3d at 128–129; *Worm II,* 5 F.3d at 747. In addition, the language used by the court in *Lowe,* suggests the importance of the EPA regulations in FIFRA preemption analysis. The court stated that "any state law claim that would require the defendant to alter its EPA-approved ... packaging to avoid liability is preempted." [7] *Lowe,* 47 F.3d at 129. The only area in which the EPA has entered and subjected pesticide packaging to its regulatory scheme is the area of child-resistant packaging. *See* 40 C.F.R. §§ 157.20 et seq. Therefore, the language in *Lowe* does not indicate blanket preemption. Rather, it indicates that state law claims which involve requiring a company to alter child-resistant packaging which has been approved by the EPA are preempted. None of these cases involved packaging claims. Defendant's reliance on the Fourth Circuit case law in this area is unpersuasive.

### IV. Conclusion

For the foregoing reasons, the Court **FINDS** that Plaintiff's state law claims based on pesticide labeling are preempted by FIFRA. The Court also **FINDS** that Plaintiff's state law claims based on pesticide packaging are not preempted by FIFRA. Therefore, the Court **GRANTS** Defendant's motion for judgment on the pleadings with regard to Plaintiff's state law "labeling" claims. However, the Court **DENIES** Defendant's motion for judgment on the pleadings with regard to Plaintiff's state law "packaging" claims. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

---

**7.** The actual language is "EPA-approved label, labeling or packaging." Plaintiff's position that "EPA-approved" modifies the term "packaging" is the correct interpretation of the phrase used by the Fourth Circuit.