No. 2--00--0834

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT

HAROLD DIEHL and AILEEN DIEHL, ) Appeal from the Circuit Court
Indiv. and as Ex'rs of the ) of Ogle County.
Estate of Archie Diehl, )
 )
 Plaintiffs-Appellants, )
 )
 v. ) No. 93--L--26
 )
POLO COOPERATIVE ASSOCIATION )
and DONNIE MILBY, ) Honorable
 ) John B. Roe,
 Defendants-Appellees. ) Judge, Presiding.

 JUSTICE CALLUM delivered the opinion of the court:
 Plaintiffs, Harold Diehl (Harold) and Aileen Diehl, individually
and as executors of the estate of Archie Diehl, sued defendants, Polo
Cooperative Association (PCA) and its general manager Donnie Milby,
for personal injuries Harold allegedly sustained from exposure to a
mixture of herbicides recommended by defendants for use on Harold's
corn crops. The trial court granted defendants' motion for summary
judgment on the basis of preemption by the Federal Insecticide,
Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C.A. §136 et seq. (West
1999)). Plaintiffs appeal. We reverse and remand.
 Harold owns and operates a grain farm. PCA sells and
distributes chemicals and fertilizers to farmers. Harold had been a
customer of PCA for approximately 14 years and frequently consulted
PCA and Milby regarding the use of various chemicals in
his farming operation. Milby had served as the general manager of PCA
for over 10 years and held a custom applicator license for the
application and recommendation of agricultural chemicals since 1984.
On May 29, 1991, Harold consulted Milby concerning the selection of an
herbicide to apply to his corn crops that year. When Milby suggested
that Harold use the same herbicide, Bicep, that Harold had used the
prior year, Harold notified Milby that he wanted to eradicate triazine-
resistant lamb's quarter weeds. Milby then advised Harold that he
could combine Bicep with the herbicide Banvel to achieve this result.
Milby indicated to Harold that the Bicep-Banvel mixture was "not
labeled." Harold asked Milby if he had used this mixture in the past
and Milby informed him that he had used it and that it was effective.
Harold gave no indication to Milby that he was familiar with Banvel.
Harold testified that Milby said that the mixture was "safe" and that
he interpreted this to mean that the mixture was safe for crops, as
opposed to safe for humans. However, Harold also testified that he
assumed that the chemicals were safe for humans because he did not
think that Milby would recommend a product to him that was not safe
for humans and because Milby did not say anything about any dangers
associated with the chemicals.
 The Bicep label indicated that the two chemicals could be
combined for application onto no-till corn. Milby recommended to
plaintiff the amounts of each chemical to use in a single tank
mixture. However, the proportions that Milby recommended were not
those listed on the label.
 The Banvel label contained a warning that users should avoid
breathing spray mist and should not get the product in their eyes or
on their skin or clothing. The Bicep label's precautionary statements
provided that users should "[a]void breathing vapors or spray mists."
 Weather conditions were breezy on the day that Harold was
contemplating applying the Bicep-Banvel mixture to his crops. Harold
telephoned Milby to ask him if he should apply the mixture on that
day. Milby assured Harold that he could apply the herbicides under
such weather conditions and advised Harold that it was urgent to do so
or else it would be too late to help Harold's crops. Harold followed
Milby's advice and spent the next 1½ to 2 days applying the mixture.
He did not read either the Bicep or the Banvel labels prior to
applying the mixture. Harold used a tractor and a trail-behind
sprayer and spray nozzle to apply the herbicides to his crops. During
the application, Harold wore a shirt and pants but no safety devices.
Each time he turned the tractor, Harold drove through a vapor mist
generated by the chemical application.
 Following the application of the chemicals, Harold began to
experience headaches, nausea, and muscle and joint pain in his arms
and legs. He had never before experienced similar symptoms after any
other chemical application.
 Plaintiffs sued defendants, requesting damages for Harold's
personal injuries. Defendants moved to dismiss the complaint, arguing
that FIFRA preempted plaintiffs' claim. The trial court denied the
motion, finding that plaintiffs' claim could encompass (1) a failure
to warn; (2) a failure to act to prevent foreseeable danger; or (3) an
act negligently undertaken or performed. Defendants subsequently
moved for summary judgment, arguing that (1) FIFRA preempted
plaintiffs' claim; and (2) as a matter of law, plaintiffs could not
establish that defendants' conduct proximately caused Harold's
injuries. The trial court granted that motion, finding that
plaintiffs' claim constituted a failure-to-warn cause of action and
was preempted by FIFRA. The court did not address the proximate cause
issue.
 Plaintiffs appeal, arguing that (1) the trial court misconstrued
their claim as a failure-to-warn claim and, thus, misapplied FIFRA;
and (2) the pleadings and depositions raise a genuine issue of
material fact as to whether Harold's conduct proximately caused his
injuries.
 Summary judgment is properly granted if the pleadings,
affidavits, depositions, admissions, and exhibits on file, when viewed
in the light most favorable to the nonmovant, reveal that there exists
no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law. Zekman v. Direct American
Marketers, Inc., 182 Ill. 2d 359, 374 (1998); see 735 ILCS 5/2--
1005(c) (West 2000). The nonmovant need not prove its case at the
summary judgment stage (Bickerman v. Wosik, 245 Ill. App. 3d 436, 438
(1993)) but must come forward with evidence that establishes a genuine
issue of material fact (Salinas v. Chicago Park District, 189 Ill.
App. 3d 55, 59 (1989)). We review de novo a grant of summary
judgment. Zekman, 182 Ill. App. 3d at 374.
 FIFRA regulates the sale, use, and labeling of pesticides.
Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991-92, 81 L. Ed. 2d 815,
825, 104 S. Ct. 2862, 2867 (1984). The statute describes the extent
to which states may regulate pesticides:
 "(a) In general
 A State may regulate the sale or use of any federally
 registered pesticide or device in the State, but only if and to
 the extent the regulation does not permit any sale or use
 prohibited by this subchapter.
 b) Uniformity
 Such State shall not impose or continue in effect any
 requirements for labeling or packaging in addition to or
 different from those required under this subchapter." 7 U.S.C.A.
 §136v(a)(b) (West 1999).
 In Cipollone v. Liggett Group, Inc., 505 U.S. 504, 120 L. Ed. 2d
407, 112 S. Ct. 2608 (1992), the Supreme Court held that the Federal
Cigarette Labeling and Advertising Act (Pub. Law 89--92, 79 Stat. 282,
as amended, 15 U.S.C.A. §§1331 through 1340 (West 1982)) and its
successor, the Public Health Cigarette Smoking Act of 1969 (1969 Act)
(Pub. Law 91--222, 84 Stat 87, as amended, 15 U.S.C.A. §§1331 through
1340) (West 1982)), preempted a plaintiff's state law claim seeking
recovery for defendants' failure to warn of the hazards of cigarette
smoking. Cipollone, 505 U.S. at 524, 120 L. Ed. 2d at 428, 112 S. Ct.
at 2621. However, the Court held that the 1969 Act did not preempt
those claims premised on the defendants' "testing or research
practices or other actions unrelated to advertising or promotion."
Cipollone, 505 U.S. at 524-25, 120 L. Ed. 2d at 428, 112 S. Ct. at
2622. Moreover, a plurality of the Court held that the 1969 Act did
not preempt the plaintiff's claim for breach of an express warranty.
Cipollone, 505 U.S. at 526-27, 120 L. Ed. 2d at 429, 112 S. Ct. at
2623. The statutory provision in Cipollone is similar to that in
FIFRA. See Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir.
1993); Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir. 1993);
Papas v. Upjohn Co., 985 F.2d 516, 517-18 (11th Cir. 1993).
 Courts have applied the Cipollone analysis to state tort law
claims involving pesticides, and they have held that FIFRA preempts
state tort actions premised on a failure to warn or on a breach of an
implied warranty. See Kuiper v. American Cyanamid Co., 131 F.3d 656,
666 (7th Cir. 1997) (off-label statement that essentially repeated
label warnings is preempted by FIFRA); Worm, 5 F.3d at 748-49 (claims
based on representations that repeated those made on labels and
literature distributed with herbicide are preempted by FIFRA); Papas,
985 F.2d at 519-20 (claims challenging the adequacy of warnings of
materials other than the label or packaging of a chemical necessarily
imply that the labeling and packaging failed to warn the user and are,
therefore, preempted by FIFRA; state law claims for breach of an
implied warranty of merchantability are preempted by FIFRA to the
extent that they depend upon inadequacies in labeling or packaging).
But see Malone v. American Cyanamid Co., 271 Ill. App. 3d 843, 850
(1995) (FIFRA does not preempt actions for breach of implied warranty
based upon advertising). However, courts have held that FIFRA does
not preempt actions based on express warranty claims or
representations voluntarily made and that do not merely repeat label
warnings. See Prather v. Ciba-Geigy Corp., 852 F. Supp. 530, 532
(W.D. La. 1994); Casper v. E.I. Du Pont De Numbers & Co., 806 F. Supp.
903, 909 (E.D. Wash. 1992).
 In Prather, the plaintiff purchased an agricultural pesticide in
an effort to rid his corn crops of Johnson grass. Prather, 852 F.
Supp. at 531. He sued the manufacturer and seller of the chemical
when the pesticide failed to eradicate the Johnson grass and
prohibited full production of his crops. Prather, 852 F. Supp. at
531. The plaintiff alleged that the defendants made recommendations
concerning the amount of the chemical to apply to his crops and the
benefits of the chemical over alternatives proffered by plaintiff.
Prather, 852 F. Supp. at 531. Plaintiff also alleged that defendants
failed to advise him of the possibility of adverse results associated
with the use of the chemicals. Prather, 852 F. Supp. at 531. The
court held that FIFRA did not preempt plaintiff's claims for breach of
voluntarily undertaken warranties and redhibition of the sale of a
defective pesticide. Prather, 852 F. Supp. at 532. "[W]here a
pesticide manufacturer or retailer has voluntarily warranted a
product's fitness for a particular purpose, courts have permitted
plaintiffs to assert state law claims for breach of this warranty."
Prather, 852 F. Supp. at 532 (citing cases).
 Here, plaintiffs do not assert that defendants made
representations that repeated any information on the Bicep or Banvel
labels or in any product advertising. Rather, they argue that Milby
was negligent in recommending an off-label combination without warning
Harold of any dangers to humans. Because that claim does not depend
on the content of the labels, FIFRA does not apply.
 While defendants acknowledge that Milby's dosages were off-
label, they assert that the labels' warnings remained operative and,
therefore, that plaintiffs' claims essentially constitute failure-to-
warn claims that are clearly preempted by FIFRA. We disagree. We
fail to see how warnings on labels prepared by manufacturers to
accompany certain specified applications can apply to any and all off-
label chemical combinations. We conclude that a label's safety
warnings do not remain operative when a retailer makes an off-label
recommendation. Plaintiffs' claims, therefore, do not challenge the
manufacturers' labels. A claim that does not challenge the labeling
of a product is not preempted by FIFRA. Papas, 985 F.2d at 520; Worm,
5 F.3d at 747.
 We note here that the trial court erroneously read the record.
In its memorandum opinion, the court found that Milby's statements
were not off-label statements because the Bicep label recommended tank-
mixing Bicep with Banvel. However, in his deposition, Milby stated
that the dosages that he recommended to Harold were not taken from the
label. For these reasons, we reverse the trial court's grant of
summary judgment for defendants on the preemption issue.
 We now turn to the issue of proximate cause. The trial court
did not address this issue. However, because we may affirm a grant of
summary judgment on any basis supported by the record (Castro v.
Brown's Chicken and Pasta, Inc., 314 Ill. App. 3d 542, 552 (2000)),
both parties address this issue, and so will we.
 Ordinarily, proximate cause is a question of fact for the jury.
Castro, 314 Ill. App. 3d at 553. However, it may be decided as a
matter of law when reasonable people cannot draw divergent inferences
from the undisputed facts. Englund v. Englund, 246 Ill. App. 3d 468,
477 (1993).
 Proximate cause is primarily a question of foreseeability: a
negligent act is a proximate cause of an injury if the injury is of a
type that a reasonable person would see as a likely result of his or
her conduct. Masotti v. Console, 195 Ill. App. 3d 838, 845 (1990).
An injury will be found to be beyond the scope of the defendant's duty
if it appears highly extraordinary that the breach of the duty should
have caused the particular injury. Masotti, 195 Ill. App. 3d at 845.
 Defendants argue that they are entitled to summary judgment
because Harold's own conduct was the sole proximate cause of his
injuries. They assert that Harold never discussed with Milby any
safety issues associated with the chemicals or the method of applying
the chemicals; that Harold never read the Bicep or Banvel labels; and
that Harold wore no safety devices when he applied the chemicals to
his crops.
 Plaintiffs respond that it was reasonably foreseeable that
Harold would rely on Milby's advice to use the off-label combination
and ignore the warnings on the Bicep and Banvel labels. Plaintiffs
assert that Milby stated that his recommended mixture was "not
labeled"; that he knew that Harold was not familiar with Banvel; that
he assured Harold that the mixture had been used in the past
successfully; and that, when Harold called Milby to discuss the breezy
weather conditions, he told Harold that it was urgent that he apply
the mixture on that day to save his crops.
 We conclude that plaintiffs have presented sufficient evidence
to establish a question of fact concerning whether Harold is
responsible for his own injuries. Unless a plaintiff fails to present
any facts to support his assertion that the defendant proximately
caused the plaintiff's injury, proximate cause is a factual question
to be decided by the trier of fact. Masotti, 195 Ill. App. 3d at 845;
see also Buchaklian v. Lake County Family YMCA, 314 Ill. App. 3d 195,
205 (2000) (question whether plaintiff's negligence was the sole
proximate cause or a contributing cause of the injury is an issue for
the jury to decide under principles of comparative negligence). For
these reasons, defendants are not entitled to summary judgment on this
basis.
 The judgment of the circuit court of Ogle County is reversed,
and the cause is remanded.
 Reversed and remanded.
 O'MALLEY and BYRNE, JJ., concur.